[S.F. No. 23334. June 11, 1976.]

MATTIE GUYTON SHEPHERD, Individually and as Administratrix, etc., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
D. LOWELL JENSEN, as District Attorney, etc., et al.;
Real Parties in Interest.

COUNSEL

Lew Warden for Petitioner.

No appearance for Respondent.

Russ, McConnell & Tarkington, Chris A. Tarkington, Patrick J. Becherer, Crosby, Heafey, Roach & May, Gordon, Waltz, DeFraga, Watrous & Pezzaglia and James A. Pezzaglia for Real Parties in Interest.

OPINION

**SULLIVAN, J.**—Plaintiff Mattie Guyton Shepherd, individually and as administratrix of the estate of Tyrone Guyton, deceased, seeks a writ of mandate directing the entry of various discovery orders compelling answers to questions propounded in depositions and the production of things and documents (Code Civ. Proc., § 2034) in the underlying action for wrongful death.

Petitioner and her former husband, John Guyton (hereafter plaintiffs), commenced against real parties in interest City of Emeryville and certain of its employees (hereafter defendants) the underlying action for damages for the alleged wrongful death of their son Tyrone Guyton. The first amended complaint, filed on February 13, 1974, alleges in substance that on or about November 1, 1973, at a location in the City of Oakland, Tyrone Guyton—then 14 years of age—was caused to suffer death as a result of gunshot wounds inflicted by one or more of defendants Dale Phillips, Thomas Mierky, and William Mathews, all of whom were police officers employed by the City of Emeryville; that plaintiffs were uncertain as to which wounds were inflicted by which officers because (1) the officers had refused to answer any questions propounded in depositions relative to the event at issue on the ground that such answers would tend to incriminate them, although each had given statements on the matter to the Alameda County District Attorney, the Alameda County Grand Jury, and other investigative agencies, and (2) the district attorney had refused to institute criminal proceedings against the officers by way of complaint, and the grand jury, after hearing evidence presented by the district attorney, had refused to return an indictment against them; that claims of damage against defendants had been duly filed and had been rejected; that the gunshot wounds causing the death

of Tyrone Guyton were inflicted negligently and with a wilful and wanton disregard for the life and safety of the deceased; and that plaintiffs were therefore entitled to compensatory and punitive damages.

A second cause of action, incorporating the essential allegations of the first, alleged as to defendants Mayor, Councilmen, and Chief of Police of Emeryville that they knew or should have known that defendants Phillips, Mathews, and Mierky "were vicious and unfit to be given the responsibilities of law enforcement officers or to be permitted to be armed with and use deadly weapons," but that said defendants negligently and with a wanton disregard for public safety employed and supervised the officers, and so proximately caused the death of Tyrone Guyton, entitling plaintiffs to compensatory and punitive damages.

A third cause of action, also incorporating the essential allegations of the first, alleged that one of the two projectiles found in the body of the deceased was fired as the minor lay prostrate on the ground, and that the officer who fired that shot—whose identity was uncertain for the reasons stated in the first cause of action—did so with the deliberate and premeditated intent to kill, and that the two remaining officers, together with certain fictitiously named defendants, negligently and wantonly permitted said officer to fire this shot, which proximately caused the death of the deceased, all of which entitled plaintiffs to compensatory and punitive damages.

The fourth cause of action, which incorporated essential portions of the first and second causes, alleged that the defendants referred to in the previously stated causes were acting within the scope of their authority as agents subject to the direction and control of the defendant City of Emeryville, entitling plaintiffs to compensatory and punitive damages against said city.

As suggested in the complaint, it appears that following the incident which resulted in the death of Tyrone Guyton the Oakland Police Department and the District Attorney of Alameda County conducted an extensive investigation. They collected all the physical evidence and conducted several scientific tests, interviewed all persons who were found to be anywhere near the vicinity of the incident, and took photographs of the scene. In the course of this investigation defendant police officers gave several oral and written statements. All of this evidence, along with the personal testimony of the officers, was presented on two occasions to the Alameda County Grand Jury as well as once to a federal grand jury,

but no indictments were returned. The district attorney has announced that the investigation on the part of his office is closed and that no further action will be taken by him.

In the course of pretrial discovery plaintiff Mattie Guyton Shepherd[1] sought the depositions of the three defendant police officers; each of them, however, invoked his privilege against self-incrimination and refused to answer any questions relative to the incident. She also secured the issuance of subpoenas duces tecum against a captain and the Chief of the Oakland Police Department and against the district attorney in order to obtain the materials and information in their possession; apparently it turned out that all of the items sought were then in the possession of the district attorney, and the latter asserted various privileges and statutory protections in refusing to deliver them. Finally she sought to obtain photographs of defendant police officers in the clothes worn by them on the night of the incident so that she could use such photographs in interviewing of witnesses; the officers, however, refused to be so photographed without a court order.

Her discovery efforts being thus frustrated, plaintiff proceeded to seek orders pursuant to section 2034 of the Code of Civil Procedure compelling answers, production of things, and sanctions against defendants and the district attorney. Voluminous memoranda by all parties to the motions followed, and after a hearing the trial court made an order which essentially denied all relief. As reflected in its written notice of ruling, the court ordered specifically: (1) that the motion for an order to require the district attorney to produce the documents, records, and tangible objects sought under the subpoena duces tecum directed to him was denied "without prejudice to Plaintiff in seeking access to have examination made of weapons, ammunition remnants or other tangible instrumentalities employed at the time of the shooting in question, provided a proper showing of the identity and the need therefor is made and appropriate arrangements for the safeguarding and preservation of such items are afforded"; (2) that the motion for an order directing the district attorney to answer further questions at depositions was denied; (3) that the motion for an order directing defendant police officers to answer questions "to which they have, or may, assert a privilege against self-incrimination under the U.S. Constitution, the California Constitu-

---

[1]Tyrone's father, John Guyton, who also is a nominal plaintiff in the underlying action, does not appear to be taking an active part in its prosecution. Hereafter, unless otherwise indicated, all reference to "plaintiff" is intended to mean plaintiff Mattie Guyton Shepherd.

tion or Section 940 of the Evidence Code" was denied; (4) that the motion for an order permitting plaintiff to photograph defendant police officers was denied; and (5) that the motions for sanctions and the scheduling of further discovery were denied.

Plaintiff now seeks a writ of mandate directing the trial court to enter orders granting the relief sought in each of the motions involved in items (1) through (4) above. The district attorney has filed a demurrer and answer by way of return to the alternative writ, as has defendant Mathews; defendants Phillips and Mierky, represented by separate counsel, have filed an answer by way of return. (See Code Civ. Proc., § 1089; Cal. Rules of Court, rule 56(c).)

I

We first turn to the matters relating to defendant police officers.

It is contended that the court manifestly abused its discretion in refusing to enter an order precluding defendant police officers from asserting their privilege against self-incrimination in deposition proceedings.[2] Although at one point in her petition plaintiff, in stating the contention, asserts that "[t]here is no privilege against self-incrimination in civil matters," such a proposition is clearly without support in the law (see generally Witkin, Cal. Evidence (2d ed. 1966) § 917, pp. 851-852, and cases there cited), and we have therefore looked beyond this heading for a clearer statement of the contention sought to be raised. The argument, then, as we understand it, is as follows: Whereas the privilege of a criminal *defendant* not to be called as a witness and not to testify (Evid. Code, § 930) may be invoked in a criminal proceeding without adverse evidentiary effects (see generally, *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]), the privilege of a *witness* to refuse to disclose matter that may tend to incriminate him (Evid. Code, § 940) does not include this protection. Such a refusal on the part of a witness, although it may be properly sustainable on constitutional grounds, may also be accompanied by what plaintiff terms "appropriate juristic consequences." Such "consequences," it is urged, should have

---

[2]In their return defendants Phillips and Mierky allege that they, through their counsel, have offered to appear for further depositions at which they will not assert their privilege against self-incrimination; accordingly, they assert that the petition is moot insofar as it seeks such relief against them. (The return is verified by Phillips' and Mierky's attorney and by Phillips himself, but not by Mierky.) It is clear, however, that defendant Mathews has *not joined in this offer, and we therefore must address ourselves to plaintiff's* contention.

been made to attend defendant officers' invocation of the privilege in the course of the instant discovery proceedings.

Plaintiff correctly understands the legal principles underlying her contention. ■ When a claim of privilege made on this ground in a civil proceeding logically gives rise to an inference which is relevant to the issues involved, the trier of fact may properly draw that inference. (*Fross* v. *Wotton* (1935) 3 Cal.2d 384, 393-395 [44 P.2d 350].) Similarly, when a witness' invocation of the privilege in a prior proceeding gives rise to an inference bearing upon his credibility on an issue in a later proceeding, no infringement of the privilege results from a disclosure of that fact. (*Nelson* v. *Southern Pacific Co.* (1937) 8 Cal.2d 648, 654-655 [67 P.2d 682].) ■ By the same token, a party seeking civil relief in the courts may not refuse on the grounds of the privilege to testify on matters relevant to his recovery. (*Newson* v. *City of Oakland* (1974) 37 Cal.App.3d 1050, 1055-1057 [112 Cal.Rptr. 890]; see generally, 4 A.L.R.3d at p. 545.)

■ Plaintiff, however, has wholly failed to show how these principles are applicable to the underlying action. Despite certain general allegations on the subject in the petition (all of which are denied by defendant police officers), it is not seriously argued here that the officers are precluded from asserting the privilege due to immunity from punishment or prosecution (see generally Witkin, Cal. Evidence, *supra,* §§ 926-932, pp. 860-868, and 1974 Supp., pp. 629-641), that the answers sought have no tendency to incriminate (see Evid. Code, § 404, and comment of Law Revision Com.; see generally Witkin, Cal. Evidence, *supra,* § 933, pp. 869-870), or that the privilege has been waived (see generally Witkin, Cal. Evidence, *supra,* §§ 934-937, pp. 870-874, and 1974 Supp., pp. 641-642). The suggestion that because only two of the three officers are alleged to have actually shot the deceased, all of them are not entitled to claim the privilege, is utterly and manifestly frivolous. For all that appears on the record properly before us, it would seem that the assertions of privilege are consistent with the constitutional rights of the officers claiming them. If such assertions continue to be made at trial the question of "appropriate juristic consequences" may well arise at that time. Plaintiff has directed us to no authority, however—and we are aware of none—which would authorize the application of any similar sanctions or "consequences" at the discovery stage upon a proper claim of privilege based on the self-incrimination clauses of the state and federal Constitutions.

■ Of more substance is plaintiff's contention that the trial court ignored its legal duties under sections 2031 and 2034 of the Code of Civil Procedure when it refused to order the officers to submit to being photographed in the clothes they wore on the night of the subject incident in order to facilitate the interviewing of witnesses by plaintiff. Section 2031, subdivision (a), provides for the production, "inspection and copying or photographing . . . of any designated documents, papers, books, accounts, letters, photographs, *objects or tangible things,* not privileged, which are relevant to the subject matter of the action, or are reasonably calculated to discover admissible evidence . . . ." (Italics added.) Subdivision (b) provides that an order of compliance may be sought pursuant to section 2034 in the event of noncompliance with a request for such discovery, and the latter section provides in general that such an order may be granted for good cause shown.

It appears that in the instant case the trial court did not address itself to the matter of good cause; apparently giving a narrow reading to the italicized language of section 2031, it concluded that it lacked legal authority, regardless of good cause, to make the order sought. In this, we think, it was in error. ■ As we have previously pointed out, California discovery statutes are to be construed liberally in favor of disclosure unless statutory or public policy considerations clearly prohibit it. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 377-378 [15 Cal.Rptr. 90, 364 P.2d 266]; see also *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 173 [84 Cal.Rptr. 718, 465 P.2d 854].) ■ So construing the terms "objects or tangible things," we conclude that the photographing of the face and body of a person is well within the contemplation of the statute.[3]

■ While mandate does not normally lie to control the exercise of the discretion, it is nevertheless "appropriate to compel an officer both to exercise his discretion and to exercise it under a proper interpretation of the applicable law." (*Anderson* v. *Phillips* (1975) 13 Cal.3d 733, 737 [119 Cal.Rptr. 879, 532 P.2d 1247]; see also *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 884-885 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 355 [196 P.2d 562]; see

---

[3]We are fortified in this conclusion by the existence of provisions for the mental and physical examination of parties. (Code Civ. Proc., § 2032.) If the policies underlying the discovery law are supported and furthered by provisions allowing for intimate psychiatric and medical scrutiny of the mind and body (including the taking of X-ray pictures of interior structures) surely they should not be deemed to prohibit a construction of section 2031 which would permit the taking of a simple photograph.

generally 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3852-3853.) Here the trial court was under the erroneous impression that it had no authority under sections 2031 and 2034 of the Code of Civil Procedure to make an order requiring the defendants to be photographed in the clothing they wore ·on the night of the subject incident. Accordingly, it denied the motion without making the discretionary determination of good cause required by section 2034. Mandate must issue requiring it to make that determination.[4]

## II

Plaintiff's final contentions relate to the trial court's orders denying her motions seeking further depositions by, and enforcement of the subpoena duces tecum against, the district attorney. These orders, it is urged, were made contrary to the court's legal duties in the premises and are therefore subject to correction upon mandate.

We observe at the outset that the district attorney opposed the motions here in question[5] on two general bases: First, he asserted that disclosure of the information sought was precluded by various statutory privileges and protections; and second, he maintained that plaintiff's motions lacked sufficient specificity and failed to make the showing of materiality and good cause required by section 1985 of the Code of Civil Procedure.[6] The trial court received written and oral argument on both of these

---

[1]The factors to be considered by the trial court in making its determination include (1) plaintiff's need for the photographs in order to effectively interview witnesses and prepare her case; (2) adverse effects which might result from such use of photographs; and (3) possible alternative methods of procedure. Plaintiff alleges that she cannot effectively prepare her case without the use of such photographs. Defendants Mierky and Phillips, in their return to the alternative writ, take the position that their effectiveness as plainclothes officers involved in undercover assignments would be jeopardized by the contemplated use of the photographs, and that their safety and that of their families might also be at stake. Defendant Mathews in his return asserts that identification by the contemplated means would be impermissibly suggestive and asks that alternatives such as lineups be considered. The court, in making any order pursuant to section 2031 of the Code of Civil Procedure. is by the terms of that section free to make use of appropriate protective orders pursuant to section 2019 of the same code.

[5]We treat the two motions together for the reason that the further testimony on deposition which is sought by petitioner relates exclusively to the materials sought to be obtained through subpoena duces tecum.

[6]Section 1985 requires that the affidavit or affidavits in support of a subpoena duces tecum "[show] good cause for the production of the matters and things described in such subpoena, [specify] the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and [state] that the witness has the desired matters or things in his possession or under his control."

points. However, the fact that it rendered essentially[7] general orders of denial, considered with certain comments made by it in the course of oral proceedings,[8] convinces us that the orders were based wholly upon the ground of privilege and statutory protection and that the court deemed it unnecessary to reach the issues relating to compliance with the specific requirements of section 1985. Issues of this nature, whose determination lies within the sound discretion of the trial court, should normally be addressed by it in the first instance,[9] and in the circumstances here present we think it appropriate to leave such issues for determination upon remand. We therefore limit our present consideration to the applicability of the various privileges and statutory protections which, the district attorney asserts, preclude and relieve him from making any of the disclosures sought by plaintiff.

Reviewing the subpoena duces tecum and supporting affidavits and declarations we find that items in seven categories were sought. In summary these were: (a) names, addresses, telephone numbers and statements of all persons who have any knowledge of the events leading up to, surrounding, and following the shooting; (b) all correspondence pertaining to scientific, medical, chemical, ballistic and neutron activation tests concerning the events surrounding the shooting; (c) all bills and records of payment for the tests in (b) above; (d) all photographs and negatives of the scene of the incident, of vehicles used in the pursuit, of persons purporting to be witnesses, and of the weapons, cartridges and other physical evidence; (e) all diagrams of the scene, the pursuit, the

---

[7]As indicated above, the court's ruling denying enforcement of the subpoena duces tecum was made "without prejudice to Plaintiff in seeking access to have examination made of weapons, ammunition remnants or other tangible instrumentalities employed at the time of the shooting in question, provided a proper showing of the identity and need therefor is made and appropriate arrangements for the safeguarding and preservation of such items are afforded." It appears, however, that the district attorney at the hearing expressly stated his willingness to permit such examination.

[8]Near the close of the hearing the court stated: "Well, I don't want to get bogged down with factual material at this point until I first resolve the question as to whether or not you have any authority to go to the District Attorney with this kind of subpoena. That's the first thing we have to get clear." Earlier, in the context of a discussion relating to compliance with the requirements of section 1985, the court stated: "The first question the Court has to decide here is the legal propriety of any such demand on the office of the District Attorney. This is the first time that such a question has ever come before me. I haven't seen any authority to the effect that a private litigant has the right to subpoena official records from the office of the District Attorney. Do any such cases exist?"

[9]In so doing the trial court should remain cognizant of the principle that the liberal policies underlying the discovery law require the resolution of doubtful questions of compliance with statutory requisites in favor of permitting discovery. (See *Pacific Tel. & Tel. Co. v. Superior Court, supra*, 2 Cal.3d 161, 172-173, and cases and authorities there cited.)

paths or trajectories of bullets, and of the positions of the persons involved in the shooting; (f) all criminal records, personnel files and other documents relating to the personality, habits and propensity for violence of defendant police officers, of James Donovan (Chief of the Emeryville Police Department) and of decedent Tyrone Guyton; and (g) all weapons, projectiles and cartridge cases involved in the shooting.

The district attorney asserts before us three distinct grounds of privilege and statutory protection, each of which in his view preclude any of the disclosures here sought. We consider them in the order in which they are presented in his return to the alternative writ.

(1) ▮▮ *Work Product*

Section 2016, subdivision (b), of the Code of Civil Procedure provides in part: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." Subdivision (g) of the same section provides: "It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts." The district attorney claims that these provisions preclude discovery of certain of the items here sought, notably witness lists and statements, correspondence and memoranda concerning scientific tests, photographs of the scene, and diagrams and reconstructions of the shooting. It is most strenuously urged that plaintiff has failed to show that any prejudice or injustice will result from her being required to gather her own evidence in these areas.

We need not address ourselves in detail to the district attorney's contentions in this respect because we have concluded that the so-called "work product doctrine" is wholly inapplicable in the circumstances of this case. It has been held without significant discussion that the doctrine set forth in the aforesaid subdivisions of Code of Civil Procedure section 2016 is applicable *in a criminal case* to preclude the defendant from access to notes taken by the district attorney in his interviewing of witnesses (*People* v. *Boehm* (1969) 270 Cal.App.2d 13, 21-22 [75 Cal.Rptr.

590]). Nevertheless, we have not been directed to, nor have we found, any authority holding that a public prosecutor—having completed his investigation and having announced, after failing to obtain an indictment, that no further action would be taken by him—is entitled to rely upon the work product doctrine when the fruits of his investigation become relevant to civil litigation to which he is not a party. The district attorney is not an "attorney" who represents a "client" as such. He is a public officer, under the direct supervision of the Attorney General (Cal. Const., art. V, § 13), who "represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted." (*Fleming* v. *Hance* (1908) 153 Cal. 162, 167 [94 P. 620].) As we point out *infra*, the extent to which the fruits of his investigations are entitled to confidentiality is governed entirely by provisions governing official information.

(2) ■ *Grand Jury Proceedings*

The district attorney next contends that certain of the materials and information here sought were presented by him to the grand jury, and that provisions prohibiting grand jurors from disclosing evidence adduced before them (notably Pen. Code, § 924.1)[10] should be construed to preclude disclosure of such evidence by the district attorney as well. Otherwise, he reasons, the purpose of these statutes would be defeated. It is clear, however, that plaintiff does not seek to learn what evidence was or was not presented to the grand jury. Nor does she seek to learn of the comments and deliberations of the grand jurors. The fact that some of the material she seeks may or may not have been presented to the grand jury cannot render such material forever immune from disclosure in another forum. Just as a person may not attach privileged status to otherwise unprivileged information by confiding it to his attorney (see *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 395-399) the district attorney may not render otherwise unprivileged material proof against disclosure by imparting it to the grand jury. Again, if such material is to be protected from disclosure, it must be on the basis of provisions relating to the disclosure of official information—which provisions we now proceed to consider.

[10] Section 924.1 provides: "Every grand juror who, except when required by a court, willfully discloses any evidence adduced before the grand jury, or anything which he himself or any other member of the grand jury has said, or in what manner he or any other grand juror has voted on a matter before them, is guilty of a misdemeanor."

**(3) *Privilege for Official Information***

■ Section 1040 of the Evidence Code[11] "represents *the exclusive means* by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 540 [113 Cal.Rptr. 897, 522 P.2d 305].) (Italics added.) It essentially establishes two different privileges—an absolute privilege if disclosure is forbidden by a federal or state statute (subd. (b)(1)), and a conditional privilege in all other cases pursuant to which privilege attaches when the court determines, in accordance with precise statutory standards, that disclosure is against the public interest (subd. (b)(2)). (See generally comment—Assem. Com. on Judiciary.)[12]

■ The district attorney here claims absolute privilege on the ground that Government Code section 6254, subdivision (f) forbids disclosure of the materials here sought. That section, which is a part of the California Public Records Act (Gov. Code, §§ 6250-6260), provides as here relevant that "nothing *in this chapter* shall be construed to *require* disclosure of records that are: . . . (f) Records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes·. . . ." (Italics added.)

It is manifest, however that the effect of section 6254 is limited to "this chapter" (i.e. the California Public Records Act, dealing with public

---

[11]Section 1040 provides: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest ,of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

[12]The cited comment appears following the code section in both the West and Deering editions of the code.

inspection of certain governmental documents) and has no application to any procedure not under that act. Moreover, section 6260, the final provision of the act, specifically provides that "The provisions of this chapter shall not be deemed in any manner to affect . . . the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state." Accordingly the provisions of section 6254 of the Government Code cannot serve as a basis of absolute privilege under Evidence Code section 1040, subdivision (b)(1), in circumstances such as those in the case at bench. To the extent they are inconsistent herewith, the cases of *Procunier* v. *Superior Court (Losoya)* (1973) 35 Cal.App.3d 207 [110 Cal.Rptr. 529], and *Procunier* v. *Superior Court (Herth)* (1973) 35 Cal.App.3d 211 [110 Cal.Rptr. 531], are disapproved.

 We are thus brought to the sole ground of privilege which is possibly applicable to this case—i.e. the conditional privilege set forth in subdivision (b)(2) of section 1040 of the Evidence Code: "A public entity has a privilege to refuse to disclose official information [defined in subdivision (a) of the section as 'information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made'], and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and: . . . (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no. privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

We note at the outset that the conditional privilege, like the absolute privilege, is applicable only to "information acquired in confidence . . . ." (§ 1040, subd. (a).) It is clear that some of the material here sought, notably the statements of defendant police officers, was not "acquired in confidence" within the meaning of the statute. Manifestly it cannot be maintained that voluntary statements of a criminal suspect to investigating authorities are "confidential." (Cf. *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 397-398.)

Assuming that at least some of the material here sought was "acquired in confidence" by the district attorney, the statute provides that it may be

deemed privileged if the court determines that its disclosure is "against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ." As we have indicated above, it appears from the trial court's general order denying the motion to compel compliance with the subpoena duces tecum, together with certain comments made by it at the hearing, that the court based its determination upon a conclusion that all of the material sought was privileged. (See fns. 7 and 8, *ante,* and accompanying text.) As we have also explained, none of that material would be protected from disclosure on the ground that it constituted work product or that it had been presented to the grand jury or that it fell within the absolute privilege set forth in subdivision (b)(1) of section 1040 of the Evidence Code. Some of it, most notably the statements given by defendant police officers to investigating authorities, would not be privileged under the conditional privilege set forth in subdivision (b)(2) of that section because it was not "information acquired in confidence" within the meaning of subdivision (a). While some of the material sought may possibly be subject to conditional privilege (because it was "acquired in confidence") it can be withheld under the provisions of subdivision (b)(2) only upon a finding that, as indicated above, its disclosure would be "against the public interest" within the meaning of that subdivision. In view of the circumstances already alluded to, we think it can be reasonably concluded that no such finding or determination was made by the trial court with respect to the specific items sought. Accordingly we consider it appropriate to return the matter to the trial court for such determination and finding. Of course, such a determination will be necessary only as to those items which the trial court, in the exercise of its sound discretion, deems to be subject to production under the requirements of specific identification, materiality, and good cause which are set forth in section 1985 of the Code of Civil Procedure.

In the interest of judicial economy we offer several comments relative to the proper exercise of discretion in the determination contemplated by subdivision (b)(2) of section 1040. As indicated above, this determination requires that the trial court consider, with respect to each item of material found to be discoverable under the provisions of Code of Civil Procedure section 1985, whether there is "a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." If it decides that question in the affirmative, then "[d]isclosure of the information is against the public interest" and the particular item should be deemed privileged. If it

decides that question in the negative, production should be ordered. Such a weighing procedure will entail a separate assessment of the "necessity for disclosure in the interest of justice" and the "necessity for preserving the confidentiality [of the subject information]."

■ Implicit in each assessment is a consideration of consequences —i.e., the consequences to the litigant of nondisclosure, and the consequences to the public of disclosure.[13] The consideration of consequences to the litigant will involve matters similar to those in issue in the determination of materiality and good cause in the context of Code of Civil Procedure section 1985, including the importance of the material sought to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means. ■ The consideration of the consequences of disclosure to the public will involve matters relative to the effect of disclosure upon the integrity of public processes and procedures (a matter to which we advert in more detail below). In this respect the court should be fully aware that—in the words of the Assembly Committee on Judiciary—"the public has an interest in seeing that justice is done in the particular cause as well as an interest in the secrecy of the information." (Comment, *supra,* final paragraph.)

The district attorney, in an argument related to one heretofore considered, strenuously asserts that the public interest in secrecy is great in this case because much of the material sought was presented to the grand jury. In so doing he places significant reliance upon certain language used by the United States Supreme Court in the case of *United States* v. *Proctor & Gamble* (1958) 356 U.S. 677, 681-682 [2 L.Ed.2d 1077, 1081-1082, 78 S.Ct. 983], relative to the reasons for maintaining secrecy in grand jury proceedings.[14] He wholly fails, however, to deal with the

[13]See comment—Assembly Committee on Judiciary, *supra,* final paragraph. (See fn. 12, *ante,* and accompanying text.)

[14]The high court, quoting from *United States* v. *Rose* (1954) 215 F.2d 617, 628-629, stated that such reasons were:

" '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' " (356 U.S. 677, 681-682, fn. 6 [2 L.Ed.2d 1077, 1081-1082].)

holding of that case, which was simply that the civil litigants there involved, who had previously been the subject of a federal grand jury investigation resulting in no indictments, had failed to make the "more particularized, more discrete showing of need" which was necessary to justify production of the *entire transcript* of grand jury proceedings. (356 U.S. at p. 683 [2 L.Ed.2d at p. 1082].) "We only hold," the court said, "that no compelling necessity has been shown for the *wholesale* discovery and production of a grand jury transcript under Rule 34 [of the Federal Rules of Civil Procedure]." (*Id.,* [2 L.Ed.2d at p. 1082]; original italics.)

Clearly, no situation even remotely similar to that involved in *Proctor & Gamble* is here before us. Manifestly plaintiff does not seek to discover the grand jury transcripts or any part of them.[15] Nor, as we have pointed out below, does she seek to learn what evidence was or was not presented to the grand jury, or the content of that body's deliberations upon it. What she seeks are materials which may or may not have been so presented. We do not perceive that any significant derogation of the policies underlying grand jury secrecy is here at stake. In any event, as the high court was careful to point out, there may be cases of urgent and particularized need in which those policies must be made to yield to some extent in order to accommodate the demands of truth and fairness in civil litigation. Although the " 'indispensable secrecy of grand jury proceedings' [citation] must not be broken except where there is a compelling necessity [,] [t]here are instances when that need will outweigh the countervailing policy." (*United States* v. *Proctor & Gamble, supra,* 356 U.S. 677, 682 [2 L.Ed.2d 1077, 1082].) It may appear, in the course of further proceedings below, that such an instance is here presented.

To recapitulate, upon remand the trial court should undertake the following further proceedings relative to plaintiff's motion to compel production of documents and things pursuant to the subpoena duces tecum: First, the trial court should undertake to determine, without respect to possible privilege, whether and to what extent the moving papers are in compliance with the requirements of specificity, materiali-

---

[15]Significantly, the *Proctor & Gamble* court indicated that for some purposes and in some circumstances the policies in favor of grand jury secrecy might be made to yield even so far as to permit discovery of the transcript itself or portions thereof. "We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.[7] Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." (356 U.S. at p. 683 [2 L.Ed.2d at p. 1082].) "[7]See, e.g., *United States* v. *Socony-Vacuum Oil Co.,* 310 U.S. 150, 234. Cf. *Jencks* v. *United States,* 353 U.S. 657."

ty, and good cause set forth in section 1985 of the Code of Civil Procedure. Second, with respect to each of the items sought which meet with those requirements the trial court should determine whether it comprehends "information acquired in confidence" which may be subject to the privilege for official information set forth in section 1040 of the Evidence Code; items which qualify for production under the standards of section 1985 but which do not consist of "information acquired in confidence" should be ordered to be produced. Third, with respect to items which qualify for production under the standards of section 1985 but which consist of "information acquired in confidence" within the meaning of section 1040 of the Evidence Code, the trial court should proceed to determine whether they qualify for the conditional privilege of subdivision (b)(2) of that section in that their disclosure is against the public interest; all items which do not so qualify should be ordered to be produced.

What we have said relative to the various privileges sought to be raised by the district attorney will also give adequate guidance to the trial court in the matter of further depositions of the district attorney and members of his staff. (See fn. 5, *ante.*)

Let a peremptory writ of mandate issue directing the trial court to undertake further proceedings in accordance with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Richardson, J., concurred.