[Civ. No. 56841. Second Dist., Div. Two. Jan. 14, 1980.]

JOSIE DOMINGUEZ et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CITY OF SAN GABRIEL, Real Party in Interest.

**COUNSEL**

Scott J. Tepper, Deborah L. Feldman and Garfield, Tepper & Ashworth for Petitioners.

No appearance for Respondent.

Barbara M. Reardon, Lawrence W. Crispo and Breindenbach, Swainston, Yokaitis & Crispo for Real Party in Interest.

Hill, Genson, Even, Crandall & Wade and James L. Crandall as Amici Curiae.

## OPINION

**ROTH, P. J.**—Petitioners in this mandate proceeding are the plaintiffs in an underlying action filed in the superior court on October 20, 1977. The complaint in the underlying action prays for damages, compensatory and punitive, against several defendants arising from the wrongful death of the decedent allegedly proximately caused by the several acts of negligence of City of San Gabriel (City) and other defendants named in separate causes of action.

A brief statement of the pertinent allegations which bottom the several causes of action reveal that Billy Joe McIlvain, a police officer formally retired by City on December 15, 1976, for a work connected disability did nevertheless on February 28, 1977, "effect" an "arrest" upon 18-year-old David Dominguez, the decedent, in the presence of decedent's friends by showing decedent a "flat badge" and "kidnaped" him to McIlvain's home whereupon McIlvain "beat, stabbed, and inflicted upon David multiple gunshot wounds" which resulted in David's death.[1]

Interlaced with the above, it is alleged there had been for some time prior to McIlvain's retirement, and on the date of decedent's arrest, an on-going feud between McIlvain and David; City knew of McIlvain's unreasonable hatred of David and also knew of McIlvain's mental instability; City knew McIlvain had been after his retirement and was at the time of the "arrest" using the "flat badge." City knew McIlvain had in his possession a hand gun and did not require McIlvain to relinquish either the gun or the badge upon his retirement. City learned at least one month before David's death that McIlvain had falsely imprisoned and assaulted one Jesse Gomez, David's friend, in an effort to have Gomez reveal to him the whereabouts of David and that on the day of David's "arrest," David's mother phoned City's police department seeking information about the arrest of her son and the City gave no information to her although they knew or should have known that at or about the time of her phone call that deputies of the county sheriff's department were surrounding McIlvain's house as a result of a phone call from McIlvain to the sheriff that he was the victim of a kidnaping by David.

The cause of action against City is not based upon respondeat superior but is predicated upon its knowing and deliberate malfeasance. In

---

[1]Mr. McIlvain was tried and convicted of first degree murder. The appeal from the judgment thereon was affirmed on December 17, 1979.

this connection it should be noted that this court in *City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, at page 785 [109 Cal. Rptr. 365], suggests a distinction in the discovery rights of a person when knowing malfeasance is involved. It should be noted too that *City of Los Angeles v. Superior Court, supra,* was decided prior to *Shepherd v. Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161].

Petitioners in preparation for trial did on January 16, 1979, duly give notice to City of their motion for an order under Code of Civil Procedure section 2034 to compel City to produce certain records and documents in its possession. City did not produce any of the records and documents requested and questioned initially the existence thereof. The records and documents requested embraced: (1) the incident which involved Jesse Gomez; (2) McIlvain's employment and personnel file (including documents relating to McIlvain's emotional instability); (3) complaints by citizens regarding McIlvain's conduct while admittedly a police officer; (4) City's knowledge about McIlvain's possession of a "flat badge;" (5) McIlvain's alleged retirement; and (6) City's rules and regulations relating to procedures followed by City in retirement of police officers.

City's opposition to the motion was and is grounded on its contentions that the information is privileged and may be sought by petitioners only by seeking relief under Evidence Code section 1040, subdivision (b)(2) by motion under section 1043 of the Evidence Code (added in 1978)[2] since the records sought fall within the provisions of

---

[2] Evidence Code section 1043 states: "(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from such records, the party seeking such discovery or disclosure shall file a written motion with the appropriate court or administrative body upon 10 days' written notice to the governmental agency which has custody and control of such records. Upon receipt of such notice the governmental agency served shall immediately notify the individual whose records are sought.

"(b) Such motion shall include:

"(1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace officer whose records are sought, the governmental agency which has custody and control of such records, and the time and place at which the motion for discovery or disclosure shall be heard;

"(2) A description of the type of records or information sought; and

"(3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.

sections 832.5, 832.7[3] and 832.8 of the Penal Code.

When petitioners' formal motion to produce was finally heard in the superior court on or about June 21, 1979, it had been made clear that the records were in existence. In the course of the proceedings the trial judge said in pertinent part: "I don't question the relevancy of these records; it's a question of public policy, disclosing them is really the thing before the court."

The motion to produce was then denied.

Thereafter, petitioners applied to this court for mandate and we denied. Hearing was granted by the Supreme Court and by that court transferred to this court with the instruction that we reconsider the petition in light of *Shepherd* v. *Superior Court, supra,* 17 Cal.3d 107 and Evidence Code section 1043.

A close reading of sections 1043 of the Evidence Code and 2034 of the Code of Civil Procedure shows that none of the substantive or procedural provisions of section 1043 of the Evidence Code were impaired by the written notice duly given under Code of Civil Procedure section 2034 and that irrespective of how petitioners' motion at bench was entitled, City suffered scarcely any literal impairment and no substantial impairment of its rights.

In any event, without attempting to discover whether the legislative history of Evidence Code section 1043 suggests that a motion made under that section is entitled to more liberal treatment than one made

---

"(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of such hearing by the governmental agency identified as having such records."

[3]Penal Code section 832.5 states: "(a)   Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies, and shall make a written description of the procedure available to the public.

"(b)   Complaints and any reports or findings relating thereto shall be retained for a period of at least five years."

Penal Code section 832.7 states: "Peace officer personnel records and records maintained pursuant to Section 832.5, or information obtained from such records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Section 1043 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury or a district attorney's office."

under Code of Civil Procedure section 2034, we assume, as did the trial court, and as do the adversary parties, for the purposes of this decision that a motion made under either must be subjected to the balancing test set forth in Evidence Code section 1040, subdivision (b)(2) which was the test applied by the trial court. Thus, the question which must be resolved is whether the trial court abused its discretion in its application of the balancing test enumerated in Evidence Code section 1040, subdivision (b)(2).

*Shepherd* v. *Superior Court, supra*, 17 Cal.3d 107, is instructive. In pertinent part, *Shepherd* holds: "While some of the material sought may possibly be subject to conditional privilege (because it was 'acquired in confidence') it can be withheld under the provisions of subdivision (b)(2) only upon a finding that, as indicated above, its disclosure would be "against the public interest" within the meaning of that subdivision. In view of the circumstances already alluded to, *we think it can be reasonably concluded that no such finding or determination was made by the trial court with respect to the specific items sought.* Accordingly we consider it appropriate to return the matter to the trial court for such determination and finding. Of course, such a determination will be necessary only as to those items which the trial court, in the exercise of its sound discretion, deems to be subject to production under the requirements of specific identification, materiality, and good cause which are set forth in section 1985 of the Code of Civil Procedure.

"In the interest of judicial economy we offer several comments relative to the proper exercise of discretion in the determination contemplated by subdivision (b)(2) of section 1040. As indicated above, *this determination requires that the trial court consider, with respect to each item of material found to be discoverable under the provisions of Code of Civil Procedure section 1985,* whether there is 'a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice.' If it decides that question in the affirmative, then '[d]isclosure of the information is against the public interest' and the particular item should be deemed privileged. If it decides that question in the negative, production should be ordered. Such a weighing procedure will entail *a separate assessment* of the 'necessity for disclosure in the interest of justice' and the 'necessity for preserving the confidentiality [of the subject information].'

"Implicit in each assessment is a consideration of consequences—i.e., the consequences to the litigant of nondisclosure, and the consequences to the public of disclosure. The consideration of consequences to the litigant will involve matters similar to those in issue in the determination of materiality and good cause in the context of Code of Civil Procedure section 1985, including the importance of the material sought to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means. The consideration of the consequences of disclosure to the public will involve matters relative to the effect of disclosure upon the integrity of public processes and procedures (a matter to which we advert in more detail below). In this respect the court should be fully aware that—in the words of the Assembly Committee on Judiciary—'the public has an interest in seeing that justice is done in the particular cause as well as an interest in the secrecy of the information.' (Comment, *supra*, final paragraph.)

" . . . . . . . . . . . . . . .

"To recapitulate, upon remand the trial court should undertake the following further proceedings relative to plaintiff's motion to compel production of documents and things pursuant to the subpoena duces tecum: First, the trial court should undertake to determine, without respect to possible privilege, whether and to what extent the moving papers are in compliance with the requirements of specificity, materiality, and good cause set forth in section 1985 of the Code of Civil Procedure. Second, with respect to each of the items sought which meet with those requirements the trial court should determine whether it comprehends 'information acquired in confidence' which may be subject to the privilege for official information set forth in section 1040 of the Evidence Code; items which qualify for production under the standards of section 1985 but which do not consist of 'information acquired in confidence' should be ordered to be produced. Third, with respect to items which qualify for production under the standards of section 1985 but which consist of 'information acquired in confidence' within the meaning of section 1040 of the Evidence Code, the trial court should proceed to determine whether they qualify for the conditional privilege of subdivision (b)(2) of that section in that their disclosure is against the public interest; all items which do not so qualify should be ordered to be produced." (Italics added.) (Fns. omitted.) (*Shepherd* v. *Superior Court* (1976) *supra*, 17 Cal.3d 107, 125-128.)

Let a peremptory writ of mandate issue directing the trial court to undertake further proceedings in accordance with the views expressed herein:

Fleming, J., and Beach, J., concurred.

A petition for a rehearing was denied February 13, 1980.