731 So.2d 30 (1999)
B.B., Petitioner,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Robert A. Butterworth, Attorney General's Office, Kenneth C. Jenne, II, Broward Sheriff's Office, Broward County Medical Examiner's Office, and D.M., Father, Respondents.
No. 98-3711.
District Court of Appeal of Florida, Fourth District.
March 5, 1999.
*31 Brett P. Rogers, and Jane M. Kerwin, Ft. Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Hailey A. Goldman, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for Respondent Department of Children and Family Services.
No appearance for Kenneth C. Jenne, II, Broward Sheriff's Office.
GROSS, J.
This is a timely petition filed by a mother seeking to have the circuit court hold a trial on a petition for adjudication of dependency that was filed in October, 1997. The mother also petitions to quash an order denying her discovery of relevant information in the possession of the Medical Examiner and a law enforcement agency investigating criminal charges.
B.B. is the mother of I.M. and I.M., five and seven year old girls (the "girls"). Their father is D.M. B.B. was also the mother of an infant girl, S.R., born on January 20, 1997. D.M. and B.B. no longer live together. B.B. lives with the father of infant S.R.
On September 26, 1997, the mother picked up infant S.R. from day care. She became concerned because the baby was running a fever and coughing. She took the baby to Holy Cross Hospital ("Holy Cross"), where the baby was admitted. On September 29, 1997, the baby was discharged by Holy Cross. Soon after the baby's release, the mother noticed that the baby was lethargic, lapsing in and out of sleep, so she called the doctor's office. A nurse told the mother that such a condition was not unusual, since the baby had been on an I.V. in the hospital.
On September 30, 1997, infant S.R.'s father dropped the baby off at an aunt's house for babysitting. After the father picked up the baby from the aunt, he and the mother became concerned because the baby would not wake up. They took the baby back to Holy Cross, and the baby was transported to Broward General Medical Center. By that point, the baby was in critical condition. Tests revealed that she was hemorrhaging in the brain; the doctors suspected that she may have been a victim of "shaken baby syndrome." The baby remained in a coma until she died on October 1, 1997.
On October 2, 1997, the Department of Children and Family Services ("Department") took the girls into custody. The Department filed an emergency shelter petition on October 3, 1997. The girls were placed with their paternal grandmother, S.M., who also happens to work for the Department. Since that time, the girls have been sheltered with the grandmother and their father, D.M.
The paternal grandmother told child protective workers that B.B. is a good mother and that she had no knowledge of the children ever being abused or neglected. Other than the incident involving infant S.R., no abuse or neglect reports had ever been filed against the mother, D.M., or the father of infant S.R. The parents were distraught over the death of their baby and wanted explanations as to how the death could have happened. Notes by a Department case worker indicate that consideration was given to sedating the parents due to their grief over the baby's condition. Both parents denied harming their daughter in any way. Infant S.R.'s father told a case worker that the baby had been sleeping when he took her to the *32 aunt's house, and that he had to shake her a little to wake her up.
On October 10, 1997, the Department filed a petition for adjudication of dependency concerning the girls. Since he was not the father of the girls, infant S.R.'s father was not named in the petition. The petition alleged that the baby had died from intentional child abuse consistent with "shaken baby syndrome." The petition acknowledged that the perpetrator of the abuse was unknown, but stated that the baby "was in the custody and control of her mother and her father ... at the time injuries were sustained."
At the arraignment on October 27, 1997, the mother denied the allegations in the dependency petition. On October 29, 1997, the mother filed a demand for discovery. In April, 1998, the mother served subpoenas duces tecum on the Broward County Sheriff's Office ("Sheriff's Office") and Medical Examiner. In both instances, the mother sought "any and all documents pertaining to infant child" S.R., including investigation and autopsy reports. On April 22, 1998, the Sheriffs Office moved for a protective order, claiming that the requested information was exempt from disclosure under section 119.07(3)(b), Florida Statutes (1997), since it pertained to an active criminal investigation into the death of infant S.R.
The trial court held a series of hearings in March, May, June, July, and September, 1998 regarding the status of the homicide investigation. During these hearings, the Sheriffs Office indicated that it was the Medical Examiner's opinion that infant S.R. did not die from natural causes and that she did not sustain her injuries during her stay in the hospital. The mother vigorously disputes the latter conclusion; she believes that the baby's injuries were inflicted at Holy Cross, since the infant was originally admitted with a fever and a cough and was extremely lethargic upon discharge from that hospital. The Sheriff's Office also stated that its investigation was still open and that disclosure of its investigative records concerning the child's death would impede the investigation. A detective explained to the trial court:
By disclosing the cause and the manner of death, potentially given the dynamics of the whole situation if somebody does want to come forward at a later time, then they build the story around the cause and the manner in which we furnish [sic], which potentially then hampers the investigation.
On June 5, 1998, the mother filed a demand for trial on the dependency petition. The judge set trial for July 31, 1998. On July 23, the Department filed an emergency motion for continuance under section 39.402(10)(b)2, Florida Statutes (1997), on the ground that it needed "additional time to prepare the case ... because of an exceptional circumstance." The Department argued that it could not proceed to trial without the investigative reports that were being withheld by the Sheriffs Office and Medical Examiner. Without access to information from the criminal investigation, the Department would be unable to sustain the allegations in the dependency case, since it could not prove that the mother was responsible for the baby's death, which was the only basis for the allegation that her other daughters were at risk.
At a September 2, 1998 hearing, the Sheriff's Office indicated that it had reached a stalemate in the investigation because it was seeking additional interviews with the baby's family but by that time the family was reluctant to talk to law enforcement. The mother's attorney stated that the mother and every other witness and family member had given a sworn statement. The Sheriffs Office responded that additional questions had arisen as a result of the autopsy report.
There are indications in the record that the children have suffered as a result of the separation from their mother. One girl was described as screaming uncontrollably and hysterically for her mother. *33 Both children have experienced stomach aches and headaches, although a doctor can find nothing physically wrong with them. They have engaged in bedwetting and manifested other emotional problems which have required their placement in therapy. The trial judge was sensitive to the girls' plight and he described their separation from the mother, if she is innocent of any wrongdoing, as "unconscionable."
The trial court recognized that the investigation could go on indefinitely,[1] but denied both the mother's demand for trial and her motion to compel disclosure of the Sheriff's and Medical Examiner's records. The judge thoughtfully considered the dilemma concerning the mother's right to proceed to trial in the dependency case balanced against the state's right to investigate the child's death. He elected to review the case on a monthly basis. During a hearing, he "welcome[d] guidance from a higher court in terms of what to do."
To summarize this tragic, Kafkaesque[2] scenario, two little girls have been removed from the custody of their mother for over seventeen months. Even though the children are now six and eight years old, there has never been any report or indication that the mother has inflicted any type of injury upon these children. Their removal was based on fatal injuries suffered by an infant sibling. The mother is a suspect because she is one of many persons who had access to the infant. A criminal investigation is pending, but there is no end in sight. Release of autopsy and investigative reports concerning the infant's death would not be in the best interest of the criminal investigation, since potential suspects could read them and adjust their stories. The Department cannot try the dependency case without going into the circumstances of the infant's death and without obtaining the investigative records of the Sheriff's Office and the autopsy report of the Medical Examiner.

I
Both the mother and the Department agree that certiorari should be granted to compel the production of investigative reports by the Sheriff's Office and the Medical Examiner's autopsy report.
The Sheriff and the Medical Examiner claim that the investigative and autopsy reports are exempt from disclosure under section 119.07(3)(b), Florida Statutes (1997), which provides that "active criminal investigative information" is exempt from disclosure under section 119.07(1)(a). Chapter 119 implements the public policy that "all state, county, and municipal records shall be open for personal inspection by any person." § 119.01(1), Fla. Stat. (1997); Art. I, § 24(a), Fla. Const. The general purpose of the Florida Public Records Act is "to open public records so Florida's citizens can directly observe the actions of their government." Barfield v. City of Fort Lauderdale Police Dep't, 639 So.2d 1012, 1014 (Fla. 4th DCA 1994).
However, the mother's right to have access to the records in issue derives not from her status as a member of the public, but from her position as a "party" to a pending dependency proceeding, within the meaning of Florida Rule of Juvenile Procedure 8.210(a). Section 39.40(1), Florida *34 Statutes (1997), provides that for dependency cases "[a]ll procedures, including petitions, pleadings, subpoenas, summonses, and hearings, in dependency cases shall be according to the Florida Rules of Juvenile Procedure unless otherwise provided by law."[3] Florida Rule of Juvenile Procedure 8.225(a)(2) authorizes any "party" to obtain subpoenas "requiring attendance and testimony of witnesses and production of records, documents, and other tangible objects at any hearing." Rule 8.245(a)(2)(E), governing discovery, requires the disclosure of the reports and statements of experts. After the filing of a dependency petition, Rule 8.245(c)(1) permits any party to take the deposition of "any person who may have information relevant to the allegations of the petition." The general rule in dependency actions is for the same type of open discovery that exists in criminal proceedings, subject to the limitations on disclosure specified in Rule 8.245(b).
In the context of a criminal proceeding, the first district has indicated that "the provisions of Section 119.07, Florida Statutes, are not intended to limit the effect of Rule 3.220, the discovery provisions of the Florida Rules of Criminal Procedure," so that a public records exemption cannot limit a criminal defendant's access to discovery. Ivester v. State, 398 So.2d 926, 931 (Fla. 1st DCA 1981). Moreover, as the Supreme Court just reiterated in Henderson v. State, No. 92,885, ___ So.2d ___, 1999 WL 90142 (Fla. Feb. 18, 1999), "we do not equate the acquisition of public documents under chapter 119 with the rights of discovery afforded a litigant by judicially created rules of procedure." Slip op. at 6, ___ So.2d ___ (quoting Wait v. Florida Power & Light Co., 372 So.2d 420, 425 (Fla.1979)).
As noted, the mother is not seeking the records in question as a citizen; she seeks them in her capacity as a party to a child dependency proceeding. The Rules of Juvenile Procedure create discovery rights similar to those in the criminal rules. No provision of Chapter 119 suggests that the public records act should override the discovery authorized by the Rules of Juvenile Procedure. Chapters 39 and 119 should be read in pari materia. Where section 39.40(1) explicitly adopts the Rules of Juvenile Procedure in dependency cases, Chapter 119 cannot be read to undermine the rules, absent a specific provision to the contrary.[4]
The preservation of broad discovery rights provided by the juvenile rules is appropriate in light of the important interests implicated in dependency cases, including the importance of preserving and strengthening family ties whenever possible, removing the child from the parent only when the child's welfare and safety require it, and providing judicial and other procedures to assure due process to all concerned. See § 39.001, Fla. Stat. (Supp. 1998). Although the child's welfare and best interests must always remain paramount, the courts must also be careful to safeguard parents' fundamental liberty interest in the care, custody, and management of their children. See Padgett v. Department of Health and Rehabilitative Servs., 577 So.2d 565, 570 (Fla.1991); In the Interest of S.M.B., 597 So.2d 848, 852 (Fla. 1st DCA 1992).
For these reasons, we grant the writ of certiorari and quash the trial court's order denying the mother's motion to compel disclosure of the Sheriff's and Medical Examiner's records.

*35 II
The trial court departed from the essential requirements of law when it denied the mother's motion to set the case for trial. Apparent throughout Chapter 39 is the legislative intent that dependency cases be expedited. Section 39.013(5), Florida Statutes (Supp.1998), provides that the circuit court "shall expedite the judicial handling of all cases when the child has been removed from the family and placed in a shelter."[5] Section 39.506(1), Florida Statutes (Supp.1998), states that if a child has been detained by order of the court and the parent denies the allegations of the dependency petition, the court shall hold an adjudicatory hearing within 30 days after arraignment unless a continuance is granted. Section 39.507(1)(a), Florida Statutes (Supp.1998), requires that the adjudicatory hearing "shall be held as soon as practicable after the petition for dependency is filed ... but no later than 30 days after the arraignment."
Regarding continuances, Chapter 39 provides:
The time limitations in this chapter do not include:
* * *
(b) Periods of delay resulting from a continuance granted at the request of the attorney for the department, if the continuance is granted:
1. Because of an unavailability of evidence material to the case when the attorney for the department has exercised due diligence to obtain such evidence and there are substantial grounds to believe that such evidence will be available within 30 days. However, if the department is not prepared to present its case within 30 days, the parent or guardian may move for issuance of an order to show cause or the court on its own motion may impose appropriate sanctions, which may include dismissal of the petition.
2. To allow the attorney for the department additional time to prepare the case and additional time is justified because of an exceptional circumstance.
(c) Reasonable periods of delay necessary to accomplish notice of the hearing to the child's parents; however, the petitioner shall continue regular efforts to provide notice to the parents during such periods of delay.
(d) Reasonable periods of delay resulting from a continuance granted at the request of the parent or legal custodian of a subject child.
§ 39.013(9), Fla. Stat. (Supp.1998); § 39.402(14), Fla. Stat. (Supp.1998); see also Fla.R.Juv.P. 8.315(a) (if parent denies allegations of petition, court shall set adjudicatory hearing within period provided by law or grant continuance as provided by law).
We reject the Department's argument that this case presents an "exceptional circumstance" under sections 39.013(9)(b)2 and 39.402(14)(b)2. The reports sought by the mother and the Department are in existence. The failure of one arm of the government to cooperate with another by providing information is not an exceptional circumstance which can justify delay under the statute. This case is properly analyzed under sections 39.013(9)(b)1 and 39.402(14)(b)1, which provide for a continuance where evidence is unavailable, the attorney for the Department has exercised due diligence to obtain it, and "there are substantial grounds to believe that such evidence will be available within 30 days." As we have held above, both the Department and the mother are entitled to obtain the evidence sought in this case.
Contrary to the Department's argument, the mother did not waive her *36 right to a trial within a reasonable time by virtue of having waived "time standards" at her arraignment. Nothing in the record indicates precisely what the mother was waiving when she waived "time standards" or that in doing so, she was agreeing to an indefinite continuance of the trial. In any event, the mother's demand for a trial filed on June 5, 1998, resurrected the time requirements of Chapter 39. At best, the waiver at the arraignment amounted to a parent's acquiescence in a continuance, which suspends the running of Chapter 39 time limitations under sections 39.013(9) and 39.402(14).
We treat the petition for writ of mandamus as a petition for writ for certiorari, grant the writ, and quash the order denying the mother's motion to set the case for trial. On remand, the case shall be set for trial as soon as possible, but not later than 30 days from the date of this opinion.
FARMER and HAZOURI, JJ., concur.
NOTES
[1] At a May 28, 1998 hearing, a homicide detective acknowledged that the investigation of this case could remain open for "years and years and years."
[2] [I]n no other Court was legal assistance so necessary. For the proceedings were not only kept secret from the general public, but from the accused as well. Of course only so far as this was possible, but it had proved possible to a very great extent. For even the accused had no access to the Court records, and to guess from the course of an interrogation what documents the Court had up its sleeve was very difficult, particularly for an accused person, who was himself implicated and had all sorts of worries to distract him.

Franz Kafka, The Trial 146 (The Modern Library 1964) (1937).
[3] As a result of the 1998 amendments to Chapter 39, this provision of the law is now contained in section 39.013(1), Florida Statutes (Supp.1998).
[4] We note that section 119.07(8), Florida Statutes (1997), provides that section 119.07 is "not intended to expand or limit the provisions of Rule 3.220, Florida Rules of Criminal Procedure, regarding the right and extent of discovery by the state or by a defendant in a criminal prosecution...." There is no reference in the section to dependency proceedings.
[5] "Shelter" is defined by the statute as "a place for the temporary care of a child who is alleged to be or who has been found to be dependent, pending court disposition before or after adjudication." § 39.01(64), Fla. Stat. (Supp.1998).