[No. B030173. Second Dist., Div. Seven. Mar. 4, 1988.]

WILLIAM RIDER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
L.F.P., INC., et al., Real Parties in Interest.

**COUNSEL**

Hertzberg & Regele and Carol Knopf for Petitioners.

DeWitt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

James K. Hahn, City Attorney, Lewis N. Unger and Annette Keller, Assistant City Attorneys, Herman & Wallach, Stuart P. Herman, Jackson, Lewis, Schnitzler & Krupman, Frank Cronin and Elizabeth Platte Johnson for Real Parties in Interest.

OPINION

**JOHNSON, J.**—Where a father publicly charges his minor daughter was raped by a former employee, are the statements by the daughter and others to the police about the alleged rape discoverable by the former employee in his civil suit against the father for defamation?

We believe, as a general rule, a plaintiff in a defamation action who claims he was wrongfully accused of rape is entitled to the same discovery as a defendant accused of rape in a criminal action. Under the facts of this case, the trial court erred in refusing to order the police to produce their notes regarding statements of the alleged victim and other witnesses inteviewed with respect to the rape charge.

## FACTS AND PROCEEDINGS BELOW

Petitioners William and Marsha Rider are plaintiffs in a suit against L.F.P., Inc., Hustler Magazine, Inc., Larry Flynt and others. The Riders were employed by the corporate defendants and by Mr. Flynt until December 1983. They allege they were wrongfully discharged from employment because William Rider refused Mr. Flynt's order to give perjured testimony in a hearing before a federal district court judge. Shortly after the Riders were fired, Mr. Flynt accused William Rider of raping Flynt's 14-year-old daughter. Mr. Flynt is alleged to have made this statement to a small circle of acquaintances, not in one of his magazines. William Rider alleges the rape accusation is false and made with malice and for the purpose of covering up the true reason why Flynt fired the Riders.

Several months after Mr. Flynt publicly accused Mr. Rider of rape, the alleged victim made statements to the police regarding the crime. The investigating officer's notes of her conversations with Ms. Flynt are in a file in the custody of the Los Angeles Police Department (LAPD). The Riders served a subpoena duces tecum on the LAPD requesting production of those records. The LAPD refused to produce the subpoenaed records on the ground they are confidential. The Riders moved for production of the records.

At the hearing on the Riders' motion to produce, the trial court reviewed the records alone in camera then denied the motion. The Riders petitioned this court for a writ of mandate directing the trial court to order production of the police records. We issued an alternative writ.

The defendants and the police filed briefs in opposition to the petition for writ of mandate. The only ground asserted for refusing production of the

# 282

police records is Ms. Flynt's right to privacy. For the reasons set forth below, we hold Ms. Flynt's right to privacy does not protect her statements to the police from disclosure to the Riders.

## DISCUSSION

■ The police department bases its refusal to produce the statements in its file on the conditional privilege afforded governmental agencies to refuse to disclose information acquired in confidence if disclosure would be "against the public interest." (Evid. Code, § 1040, subd. (b)(2).) Disclosure is against the public interest where "there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ." (*Ibid.*) ■ The police department contends preserving the confidentiality of the statements is necessary to protect the privacy rights of the alleged rape victim, Ms. Flynt.[1] The Riders do not dispute the standing of a government agency to assert a citizen's right to privacy in the agency's records. (See *Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69, 76-77 [161 Cal.Rptr. 19]; *Sinacore* v. *Superior Court* (1978) 81 Cal.App.3d 223, 225 & fn. 2 [146 Cal.Rptr. 302].)

■ In California, an individual's privacy is specifically recognized as an "inalienable" constitutional right. (Cal. Const., art. I, § 1.) This right to privacy applies to sexual relations outside of marriage (*Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899, 903-904 [152 Cal.Rptr. 210]; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 292 [160 Cal.Rptr. 194]) and applies to minors as well as adults. (*Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 277-278 [226 Cal.Rptr. 361].) Moreover, a rape victim does not surrender all claim to privacy in her sexual experiences merely by initiating a criminal action. (Cf. *Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 842 [239 Cal.Rptr. 292, 740 P.2d 404]; Gov. Code, § 6254, subd. (f)(1)-(2); Evid. Code, §§ 1103, 782-783.)

The right to privacy, however, is not absolute. (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842.) On occasion, one person's right to privacy may conflict with another's right to a fair trial. When this happens "courts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery." (*Id.* at p. 842.)

Previous cases have required courts to balance a civil litigant's need for discovery against an individual's right to keep sexual conduct private. These

---

[1] Neither the police nor the defendants have made any showing why the statements of other persons interviewed by the police in connection with the alleged rape should not be disclosed to the Riders. Thus, we consider the claim of privilege as to them abandoned. (See *Henderson* v. *Security Nat. Bank* (1972) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

cases agree, in principle, that the litigant's need for discovery prevails over the competing interest in sexual privacy. For example, in *Vinson* v. *Superior Court, supra,* the court acknowledged the defendant in a suit for sexual harassment could, on a showing of good cause, inquire into the plaintiff's past sexual conduct. (43 Cal.3d at pp. 843-844.) A mother's sexual activities are discoverable by the defendant in a paternity suit. (*Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 904.) A husband's extramarital sex life is discoverable by the defendant in a wrongful death action if the husband alleges damages for loss of consortium of his wife. (*Morales* v. *Superior Court, supra,* 99 Cal.App.3d at pp. 290-291.) The rationale of these decisions is that a generalized desire to keep one's sexual conduct private yields to " 'the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings.' " (*Fults* v. *Superior Court, supra,* 88 Cal.App.3d at p. 904 quoting from *In re Lifschutz* (1970) 2 Cal.3d 415, 432.) (See also *Morales* v. *Superior Court, supra,* 99 Cal.App.3d 283, 290; *Vinson* v. *Superior Court, supra,* 43 Cal.3d at pp. 841-842.)

 Generalities, however, seldom decide cases. It is not enough to find there is a compelling state interest supporting an intrusion into Ms. Flynt's right to privacy. Indeed, the cases cited above, *Vinson, Fults* and *Morales,* all struck down trial court discovery orders because they allowed the litigant to inquire too deeply into the subject's sexual conduct. The question is not whether but how far the Riders may intrude into Ms. Flynt's privacy.

In describing the limits on discovery of a person's sexual relations, the court in *Fults* stressed the requirements of relevancy to the subject matter and that discovery be reasonably calculated to lead to admissible evidence. "When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it *may* lead to relevant information. . . . It is essential 'that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake.' . . . '[A]n adequate foundation for inquiry must be laid before proceeding in such a manner as will substantially intrude upon . . . constitutionally protected activities.' " (88 Cal.App.3d at pp. 904-905, italics added; citations omitted.)

We believe discovery available to a criminal defendant accused of rape provides authoritative guidance to discovery available to a *plaintiff* accused of rape who sues for defamation. Both cases pit the privacy interests of the alleged rape victim against the accused's right to a fair trial. A rape prosecution requires the victim to reveal facts of an intimate sexual nature. No doubt the victim suffers an invasion of privacy in revealing facts about the rape. (See *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 380 [193 Cal.Rptr. 422].) Yet, it is clear the defendant in a rape prosecution

is entitled to pretrial discovery of statements by the victim to the police and the prosecutor. (*Vance* v. *Superior Court* (1958) 51 Cal.2d 92, 93-94 [330 P.2d 773]; *People* v. *Williams* (1979) 93 Cal.App.3d 40, 63-64 [155 Cal.Rptr. 414].) Indeed, the LAPD admits if Mr. Rider were being prosecuted for rape he would be entitled to the very documents it seeks to deny him in this case.

We perceive no rational basis for providing the alleged rape victim's statements to the accused when he is a criminal defendant but withholding those statements when he is a civil plaintiff suing for defamation.

Admittedly, a criminal defendant has certain constitutional rights not applicable to a civil litigant. Among these are the Sixth Amendment rights "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." But a criminal defendant's right to discover statements made by the victim to the police arises not from the Sixth Amendment but from the due process guarantee of a fair trial. (*Bradley* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194]; *Murray* v. *Carrier* (1986) 477 U.S. 478, [91 L.Ed.2d 397, 415 (Stevens, J. conc.)

Fair trials are not limited to criminal defendants. (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 842.) In *Herbert* v. *Lando* (1979) 441 U.S. 153 [60 L.Ed.2d 115, 99 S.Ct. 1635], a defamation action by a public figure against media defendants, the court upheld the plaintiff's right to conduct discovery into the defendants' editorial process over defendants' claim to an editorial privilege based on the First Amendment. The court reasoned *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412] and its progeny "made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant." (441 U.S. at p. 160 [60 L.Ed.2d at p. 124].) The privilege asserted by defendants, if recognized, would deprive plaintiff of the means to "obtain the necessary evidence to prove the critical elements of his cause of action." (*Ibid.*) (7) The court went on to cite *United States* v. *Nixon* (1974) 418 U.S. 683 [41 L.Ed.2d 1039, 94 S.Ct. 3090], a criminal law discovery case, for the proposition, "Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." (441 U.S. at p. 175 [60 L.Ed.2d at p. 133].)

We discern no difference in relevancy or good cause which would justify making the victim's statements to the police available in a criminal action but not in a defamation action. It is difficult to imagine any material more relevant to a defamation case based on a false accusation of rape than the statements by the alleged victim to the police. Review of these

statements is reasonably calculated to lead to the discovery of admissible evidence. The principal value to a criminal defendant in seeing the victim's statements lies in their impeachment potential. (*Tupper* v. *Superior Court* (1958) 51 Cal.2d 263, 265 [331 P.2d 977]; Evid. Code, § 1235.) The statements may also lead to evidence admissible to prove a motive behind the accusation other than the truthful reporting of a crime. (Evid. Code, § 1101.) At this stage of the proceedings it appears truth is the only defense available to the defendants. Thus the Riders must anticipate Ms. Flynt will testify at the trial and prepare accordingly.

We have reviewed the statements presented to the trial court in camera and we find the court clearly erred when it concluded that nothing in those statements could be helpful to the Riders.

Defendants offer three reasons why Ms. Flynt's statements to the police should not be disclosed to the Riders.

First, they argue, Mr. Rider is not "defending himself against a rape charge." On the contrary, this is an apt description of Mr. Rider's situation. Although he is not a criminal defendant he stands publicly accused of the rape of a minor girl. If false, this public accusation is slanderous per se. (Civ. Code, § 46.) As we explained above, the criminal/civil distinction does not provide a rational basis for denying the Riders access to Ms. Flynt's statements. Futhermore, while he may not be faced with prison, the false accusation of a crime produces other harms just as real as steel bars. "[T]he more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." (*Gertz* v. *Robert Welch, Inc.* (1973) 418 U.S. 323, 350 [41 L.Ed.2d 789, 811, 94 S.Ct. 2997].) Just as a criminal defendant accused of rape has the right to look to the courts for protection from a wrongful conviction, Mr. Rider has a "compelling call on the courts for redress of injury inflicted by defamatory falsehood." (*Id.* at p. 345 [41 L.Ed.2d at p. 808].)

Next, defendants argue releasing Ms. Flynt's statements to the Riders would result in psychological damage to Ms. Flynt. They provide no evidentiary support for this proposition. No doubt prosecuting a rape case through trial can be a traumatic experience for the victim. If the case at bar goes to trial, it could be, for Ms. Flynt, the equivalent of prosecuting a rape case. But all that is before us at this time is the question of releasing to the accused statements Ms. Flynt has already volunteered to the police. We are not dealing with any intrusion into Ms. Flynt's sexual experiences beyond what she has already revealed to others. We fail to see how any appreciable psychological harm could result.

We further observe that what will be disclosed as a result of our order is no more than would have been revealed in open court if the People had elected to pursue the prosecution she invited by voluntarily making these charges to the police. Ms. Flynt was 14 years old when she made her statements to the police; old enough to understand a rape trial would result in an invasion of her privacy. If she did not understand this before she went to the police she did afterwards. The investigating officer's notes reveal that on two occasions the officer advised Ms. Flynt she could expect to appear in court, her appearance would be "newsworthy," and that a court appearance "would result in a very open discussion of [Ms. Flynt's] sexual behavior with [Mr. Rider] and [she] should be prepared for that possibility." Our order in this case will direct disclosure of Ms. Flynt's statements be limited to the Riders, their counsel and only such others directly involved in litigating the Riders' claims. This order will assure no harm will come to Ms. Flynt as a result of disclosing her statements.

Defendants' last argument is the Riders can obtain the information they seek by deposing Ms. Flynt. This is not a reasonable alternative. A deposition could be more intrusive into Ms. Flynt's privacy than the limited discovery the Riders are now seeking. Without Ms. Flynt's statements as a guide, the Riders would be left with one question: "What did you tell the police?" The odds are her answer will be "I don't remember" and the controversy over release of her statements will be back in court. Even if Ms. Flynt does remember some or all of what she told the police, compelling a litigant to depose a witness without access to the witness's prior statements on the subject is a poor use of discovery and there is no justification for it in this case.

The case before us is distinguishable from *Kahn* v. *Superior Court* (1987) 188 Cal.App.3d 752 [233 Cal.Rptr. 662]. In *Kahn,* the court held even the state's compelling interest in facilitating the ascertainment of truth in connection with a legal proceeding did not outweigh the need to maintain the confidentiality of academic tenure proceedings. (*Id.* at pp. 765, 770.) Consequently, the plaintiff, who alleged on information and belief he was defamed by Kahn and others at a meeting held to consider his tenure at a university, was not allowed to depose Kahn as to what was said about plaintiff at the meeting.

In *Kahn,* the statements at the meeting were made with the expectation they would be held in strictest confidence. (*Id.* at pp. 755-756, 768.) Ms. Flynt was not assured of confidentiality in her statements. To the contrary, she was told by the police she should expect her story to come out in court and be reported by the media. The court's major concern in *Kahn* was that making the tenure committee's discussion public would "seriously

undermine" the full and frank evaluations of teachers, contrary to the public interest in promoting academic excellence. (*Id.* at pp. 769-770.) As we have already pointed out, releasing Ms. Flynt's statements will not chill the future reporting of rapes because the alleged rape victim's statements to the police are already discoverable in a criminal trial. Furthermore, in *Kahn* the court was willing to risk the deterioration of academic excellence if discovery would assist a plaintiff alleging discrimination. (*Id.* at p. 770.) But, the court did not feel the injury to plaintiff's reputation as a scholar was sufficient to override the public interest in maintaining academic excellence. (*Id.* at pp. 757, 770.) William Rider was not charged with poor scholarship. He was charged with a particularly heinous felony—rape of a minor; a crime deserving opprobrium from the public at large. Thus, the interests at stake here are of greater weight than in *Kahn*.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court for the County of Los Angeles to take the following actions in the case of William Rider, et al. v. L.F.P., Inc., et al., No. WEC 090172: (1) vacate its order of July 31, 1987, denying plaintiffs' motion to compel production of documents; (2) make a new order compelling production by the Los Angeles Police Department of the preliminary investigation report and follow-up investigation report in case number DR 84-0807459 on condition the information contained therein shall not be used or disclosed by plaintiffs or their counsel for any purpose outside the confines of this litigation.

Lillie, P. J., and Thompson, J., concurred.