[No. G023138. Fourth Dist., Div. Three. Mar. 30, 2000.]

COUNTY OF ORANGE et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
FEILONG WU et al., Real Parties in Interest.

## Counsel

Franscell, Strickland, Roberts & Lawrence, Tracy Strickland, Priscilla F. Slocum and Cindy S. Lee for Petitioners.

Thomas F. Casey III, County Counsel, and Miguel A. Marquez, Deputy County Counsel, for California State Association of Counties and County of San Mateo as Amici Curiae on behalf of Petitioners.

Mayer, Coble & Palmer, Martin J. Mayer and J. Scott Tiedemann for California State Sheriffs Association, California Police Chiefs Association and California Peace Officers Association as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Jeffrey Wilens for Real Parties in Interest.

## Opinion

**CROSBY, J.**—The County of Orange, its sheriff, and various employees of the sheriff's department (collectively, the County) seek extraordinary relief from an order allowing suspects in an ongoing criminal investigation to review the contents of the investigative file through the medium of civil discovery. The County argues the trial court abused its discretion in granting discovery of the file at this time. The County asserts the court should have stayed the civil action for a reasonable period to allow authorities to complete the investigation before having to divulge information that could compromise the investigation and derail a potential prosecution. We agree that the court erred in the breadth and timing of the discovery order and grant the writ requested, subject to specific limitations discussed below.

I

On the morning of August 12, 1996, Edith Marie and Feilong Wu reported the disappearance of Edith's two-year-old son, C. T. Turner. The Wus

claimed C. T. had either walked out of or been abducted from the family's Mission Viejo home. A large search party of volunteers and military personnel did not find the child that day. The next morning, Orange County Sheriff's Department investigators questioned the Wus. That afternoon the boy's body was discovered under leaves and other debris in a ravine near their home. An autopsy determined the cause of death was suffocation.

To date the homicide remains unsolved. But according to the Wus, in several newspaper reports, sheriff's department representatives have publicly indicated they are suspects.

On May 13, 1997, the Wus filed this action for defamation, conversion, spoliation of evidence, and various civil rights violations related to the sheriff's department's investigation, including their initial detention and questioning. The Wus claim "they were lured to the police station on false pretenses and then held against their will and subjected to lengthy and aggressive interrogations, during which they were not free to leave," all without benefit of *Miranda* warnings. (*Miranda v. Arizona* (1966) 384 U.S. 436.)

With respect to their defamation claim, the Wus assert sheriff's department representatives publicly identified them in four news accounts (and in an additional conversation with a local attorney) alternately as "among the suspects," the sole remaining suspects, and the "focus of the investigation." Each statement "was equivalent to an accusation plaintiffs killed C. T., which is false."

Plaintiffs also allege deputies searched their home pursuant to an invalid search warrant obtained by submitting a false and misleading affidavit to the magistrate. While searching the Wus' home pursuant to the invalid warrant, deputies wrongfully seized certain immigration documents belonging to Feilong Wu that he needed to apply for a green card and work permit. The County refused to return these documents, leading to loss of employment opportunities for Feilong Wu.

*Three days* after the complaint was served, on May 28, 1997, the Wus served a request for production, specifying 25 categories of documents and other items. In effect, they requested the sheriff's entire investigative file relating to C. T.'s murder. For example, they sought production of "[a]ll documents generated by any police agency relating to the death of C. T. Turner . . . ," including their own statements, autopsy reports, scientific testing, descriptions of physical evidence, and witness statements.

The County refused to produce any of the requested items on the ground that the investigative file is protected by the official information privilege.

(Evid. Code, § 1040, subd. (b)(2).)[1] The Wus moved to compel production. The superior court conducted an in camera review of the investigative file and an in camera hearing on the applicability of the privilege.[2] After taking the matter under submission, the court ruled on March 24, 1998, that the County "failed to meet [its] burden under Evidence Code [section 1040]" and ordered production of all requested documents to the Wus' counsel, subject to a protective order. This protective order allows the Wus to review the documents if their attorney "finds it necessary," but prohibits anyone else from examining them or otherwise learning of their contents absent a court order.

The County sought writ relief and a stay. We stayed the order and issued an alternative writ.

## II

 The official information privilege set forth in section 1040, subdivision (b)(2) applies to "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (§ 1040, subd. (a).) The privilege is conditional and attaches only if "the court determines, in accordance with precise statutory standards, that disclosure is against the public interest . . . ." (*Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 123 [130 Cal.Rptr. 257, 550 P.2d 161].)

The Supreme Court may have exaggerated a bit in referring to "precise statutory standards." The statute states only that disclosure is against the public interest where "there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ." (§ 1040, subd. (b)(2).) In other words, application of the privilege involves the always imprecise art of weighing competing interests.

 Before we take up the trial court's exercise of discretion in weighing the interests here, we must first consider the Wus' argument that much of

---

[1]All further statutory references are to the Evidence Code unless otherwise indicated.

[2]We have declined to examine the file to avoid compromising the investigation. We do not need to look at it to understand, for example, that it contains details only the killer(s) would know. The more people who are aware of those details the less weighty would be any future confession or slip of the tongue by a suspect and the more likely that such information might end up in unauthorized hands or the press. And any effort we might make to describe the fruits of the investigation to date would simply provide potentially useful information to the perpetrator(s).

This is not to say that we would *never* review the file in assessing a lower court ruling. That time may come. But for now we find disclosure was premature in any event and, thus, there was no reason to examine the file in this proceeding.

the information contained in the investigative file was not "acquired in confidence" and is thus not privileged. (§ 1040, subd. (a).) They argue, for example, their own statements to the police, as well as statements made by other witnesses, were not acquired in confidence. Similarly, they argue that photos, sketches, and police reports concerning the crime scene were not acquired in confidence because the scene itself was "a ravine open to the public."

The Wus' emphasis on the manner in which the file's contents were gathered misses the point. Viewed individually, many of the pieces of information in the file may not have been "acquired in confidence" in the literal sense of that term. But the logic of the Wus' argument does not withstand close scrutiny. Simply because the public may observe the police gathering evidence at a crime scene, or interviewing witnesses, it does not follow that the information obtained is public.

Evidence gathered by police as part of an ongoing criminal investigation is by its nature confidential. This notion finds expression in both case and statutory law. For example, in *People v. Otte* (1989) 214 Cal.App.3d 1522 [263 Cal.Rptr. 393], the court made the following observation concerning the confidentiality of criminal investigative files in the course of interpreting the section 1041 privilege as to confidential informants: " 'Communications are made to an officer in official confidence when the investigation is of such a type that disclosure of the investigation would cause the public interest to suffer. An apt illustration of this situation is the investigation of a crime by police officers. [Citations.] It is not only where a witness requests that his statement be kept in confidence, but in all cases of crime investigation that the record and reports are privileged.' (*Jessup* v. *Superior Court* (1957) 151 Cal.App.2d 102, 108 [311 P.2d 177].)" (*People v. Otte, supra,* 214 Cal.App.3d at p. 1532; see also *Rivero v. Superior Court* (1997) 54 Cal.App.4th 1048, 1058-1059 [63 Cal.Rptr.2d 213] [confidentiality of criminal investigations must be maintained so that potential witnesses come forward]; *People v. Wilkins* (1955) 135 Cal.App.2d 371, 377 [287 P.2d 555]; *People v. Pearson* (1952) 111 Cal.App.2d 9, 18, 24 [244 P.2d 35].)

The Information Practices Act of 1977 (Civ. Code, § 1798 et seq.) protects information compiled by law enforcement agencies for the purpose of investigating criminal activities, including reports of informants and investigators. (Civ. Code, §§ 1798.40, 1798.41.) Similarly, Penal Code section 11107, which states the obligation of each sheriff or police chief to report crime data to the Department of Justice, specifically recognizes the confidential nature of criminal investigations. That statute includes the proviso that "[t]he Attorney General may also require that the report shall indicate

whether or not the submitting agency considers the information to be confidential because it was compiled for the purpose of a criminal investigation of suspected criminal activities." (Pen. Code, § 11107.)

The Public Records Act (Gov. Code, § 6250 et seq.) includes a specific exemption from disclosure for law enforcement investigative files. This exemption permits the state to withhold "[r]ecords of . . . investigations conducted by, or records of intelligence information or security procedures of . . . any state or local police agency, or any such investigatory or security files compiled by any other state or local police agency . . . for correctional, law enforcement or licensing purposes . . . ." (Gov. Code, § 6254, subd. (f).)

In *Williams v. Superior Court* (1993) 5 Cal.4th 337 [19 Cal.Rptr.2d 882, 852 P.2d 377], the Supreme Court interpreted the scope of this Public Records Act exemption for police investigative files. The court held that once an investigation has begun, all materials that relate to the investigation and are thus properly included in the file remain exempt from disclosure indefinitely. (*Id.* at pp. 355, 361-362.) Significantly, the court noted that the exemption "protects materials that, while not on their face exempt from disclosure, nevertheless become exempt through inclusion in an investigatory file." (*Id.* at p. 354.) Though the provisions of the Public Records Act are inapplicable to civil discovery proceedings (Gov. Code, § 6260), the act's express exemption of police investigative files from disclosure reinforces the view that such files are confidential in nature.

Given the broadly recognized confidentiality of investigative files, we find no need to separately analyze the manner in which each element of the file was obtained for application of the official information privilege. Instead, we conclude that the contents of police investigative files sought in civil discovery must remain confidential so long as the need for confidentiality outweighs the benefits of disclosure in any particular case. (§ 1040, subd. (b)(2).) We thus proceed to that inquiry.

### III

In *Shepherd v. Superior Court, supra,* 17 Cal.3d 107, the court advised that the "weighing procedure will entail a separate assessment of the 'necessity for disclosure in the interest of justice' and the 'necessity for preserving the confidentiality [of the subject information.]' [¶] Implicit in each assessment is a consideration of consequences—i.e., the consequences to the litigant of nondisclosure, and the consequences to the public of disclosure. The consideration of consequences to the litigant will involve

matters similar to those in issue in the determination of materiality and good cause in the context of Code of Civil Procedure section 1985, including the importance of the material sought to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means. The consideration of the consequences of disclosure to the public will involve matters relative to the effect of disclosure upon the integrity of public processes and procedures . . . ." (*Id.* at p. 126, fn. omitted.)

■ For its part, the County paints a compelling picture of the dire consequences that could result from the disclosure of the contents of an investigative file to the suspects in a possible murder. The County invokes the powerful public interest in solving homicides and bringing killers to justice. Undoubtedly, that interest is at risk if confidential information about the homicide investigation is released to suspects. There is an obvious danger that they may learn crucial information that would enable them to avoid apprehension. More specifically, permitting suspects to review materials in an investigative file "will enable them to invent stories, explain away evidence thus far gathered, and intimidate or otherwise influence potential witnesses."

The County and amici curiae also argue that witnesses will be fearful of providing incriminating information to police investigators if their statements may be disclosed to suspects, while the suspects are still at large. In *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117 [86 Cal.Rptr.2d 623, 979 P.2d 982], our Supreme Court cited similar concerns in affirming the importance of preserving the secrecy of grand jury proceedings that have concluded without indictment. The court observed, "In the absence of an indictment, without the protections of the court process, the innocently accused and even witnesses are more vulnerable to a risk of adverse consequences ranging from reputational injury to retaliation." (*Id.* at p. 1132.) There is also the concern that disclosure will encourage frivolous lawsuits by providing suspects with a tool to avoid criminal prosecution.

The Wus counter with the premise that they are the innocent victims of police misconduct and their civil case is an attempt to expose that misconduct. They champion the significant interest of civil litigants in having their day in court, particularly where, as here, claims of civil rights violations and defamation are at stake. The Wus argue they have a compelling need for the requested information from the investigative file to prove their case against the County and discount law enforcement's need to withhold the information.

The Wus also assert active investigation stopped by January of 1997, and there is no longer police activity concerning the homicide. They claim the

sheriff's department, by its own admission, has exhausted all leads. As a consequence, they argue the investigation has hit a dead end and there is no need to maintain the confidentiality of the sheriff's file.

The County responds that there is no limitations period for murder. (Pen. Code, § 799.) Homicide cases remain open until they are solved, which sometimes occurs years after the crime with the help of new technology (e.g., DNA) or witnesses who become willing to provide new information because of some change of circumstances or because they no longer feel threatened by the suspect. The investigators remain hopeful for a break in the case. It is approaching four years since C. T.'s death, but an investigation of that length is common enough.

The Wus argue *Rider v. Superior Court* (1988) 199 Cal.App.3d 278 [244 Cal.Rptr. 770] supports their claim to discovery of the investigative file. *Rider* involved a defamation action filed by a man against his former employer for allegedly falsely accusing him of raping the employer's minor daughter. At issue in *Rider* was whether the girl's statements to the police concerning the alleged rape were discoverable by the plaintiff. The court held they were: "[A] plaintiff in a defamation action who claims he was wrongfully accused of rape is entitled to the same discovery as a defendant accused of rape in a criminal action." (*Id.* at p. 281.)

The *Rider* decision is not dispositive. The police in *Rider* objected to production of their notes of the girl's interview to protect her privacy. (199 Cal.App.3d at pp. 282-283.) While certainly important, a rape victim's privacy interest is not as weighty a concern as the need to apprehend and convict a child killer. *Rider* was correctly decided, we think, but it is not this case.

We conclude on the record before us that the public interest in solving C. T. Turner's homicide and bringing the perpetrator(s) to justice outweighed the Wus' interest in obtaining the discovery sought, at least at the time this matter was considered below. We recognize the rather arbitrary nature of this conclusion, but the order we review was made less than a year after this civil action was filed. (And it is still less than three years since it was filed.) When one reflects that the lives of other children may be at risk with the killer(s) still at large, the important interests in vindicating wronged plaintiffs and clearing dockets do not seem quite so important. Consequently, we find the superior court abused its discretion in ordering production of the investigative file to the Wus' attorney. And, parenthetically, we

think that most reasonable parents in the Wus' position would concur that the interest in apprehending a child's killer must continue to take priority over any civil action of theirs.

This is not to say, however, that the Wus can never obtain the requested discovery. Law enforcement investigative files are not on equal footing with grand jury proceedings, which, except in very limited circumstances, remain forever secret where no indictment is returned. (Compare *Daily Journal Corp. v. Superior Court, supra*, 20 Cal.4th at pp. 1127-1128 [only under three narrow exceptions will grand jury proceedings be made public] with *Swanner v. United States* (5th Cir. 1969) 406 F.2d 716, 719 ["while pendency of a criminal investigation is a reason for denying discovery of investigative reports, this privilege would not apply indefinitely"] and *Jabara v. Kelley* (E.D.Mich. 1977) 75 F.R.D. 475, 493-494 [the qualified privilege to prevent disclosure expires after a reasonable time]; see also *Brown v. Thompson* (5th Cir. 1970) 430 F.2d 1214, 1215; *Kinoy v. Mitchell* (S.D.N.Y. 1975) 67 F.R.D. 1, 12; *Capitol Vending Co. v. Baker* (D.D.C. 1964) 35 F.R.D. 510, 591.)

The appropriate remedy in this case is for the trial court to stay discovery of investigative information in the civil action in order to allow the sheriff's department the necessary time to investigate. (*Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 690 [208 Cal.Rptr. 743].) And, should that become necessary, the trial court should stay the entire action in the interest of justice to avoid a potential statutory dismissal. (See Code Civ. Proc., § 583.110 et seq.) We are cognizant of the Wus' concern that the County not be allowed to "immunize [itself from] any lawsuit by the Wus forever simply by keeping the case open." Our order is intended to preserve the confidentiality of the investigative file for some reasonable period of time, but not forever.[3]

In the future the trial court may determine that there has not been enough progress in the investigation to justify protecting most of the investigative file any longer. For example, the court may find the trail has grown cold and there is no reasonable probability the case will be solved. As noted above, we think it was simply to soon to have made that determination when the order under review was made. At that point the court may conclude the risk to the investigation from releasing confidential information from the investigative file is no longer a compelling concern. Instead, the balance will have

---

[3]At any time the Wus could request the trial court to lift a stay of the action and proceed to trial without discovery of the investigative file. Privilege issues certain to arise at trial would simply have to be dealt with as they might come up, including the knotty problem of the County attempting to rely on the investigative file in its defense.

swung in favor of giving the Wus *limited* access to that information in the file which may help develop their case against the County. In other words, with the passage of time, changing circumstances will inevitably reverse the balance of competing interests under section 1040, subdivision (b)(2). (*Rubin v. City of Los Angeles* (1987) 190 Cal.App.3d 560, 587 [235 Cal.Rptr. 516].) .

What parts or how much of the file to disclose to the Wus is a question for the trial court.[4] The court will have to carefully assess the Wus' actual need for the information against the public's continuing need for confidentiality. That assessment must involve the requisite factors of "materiality and good cause . . . including the importance of the material sought to the fair presentation of the litigant's case, [and] the availability of the material to the litigant by other means . . . ." (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 126.)[5]

Let a peremptory writ of mandate issue directing the trial court to vacate its order compelling the production of the investigative file and reconsider in light of the views expressed above. Should the court withhold discovery of the entire investigative file, it shall reconsider the matter at reasonable intervals at plaintiffs' request and continue in that fashion until such time as it may conclude that the Wus' interest in disclosure outweighs any further

[4]Obviously, the file may contain sensitive information that should not be disclosed preindictment. Or there may be material relevant to the Wus' civil action that could possibly be safely confided to their attorney only subject to a stringent protective order. In that event the trial court may choose to look for guidance from trade secret cases in fashioning a remedy that preserves confidentiality as much as possible. There will likely be relevant information that can be released without jeopardizing the investigation at all.

[5]An evaluation of the legal sufficiency of the Wus' various causes of action will be relevant to the weighing of the Wus' need for the requested information. For example, as to the defamation claim, the court may consider whether the absolute privilege for acts in performance of official duty applies to a sheriff's department representative's act of discussing the status of a murder investigation. (See *Kilgore v. Younger* (1982) 30 Cal.3d 770, 779 [180 Cal.Rptr. 657, 640 P.2d 793] [Attorney General performed "official duty" at press conference].) Along the same line, the court may consider whether the Government Code section 821.6 absolute immunity for a public employee who causes injury by "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause" encompasses the act of publicly naming someone as a suspect in an ongoing criminal investigation. (See *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 191-192 [45 Cal.Rptr.2d 82], citing *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210 [34 Cal.Rptr.2d 319] [investigation is an essential step in instituting a judicial proceeding, so investigative acts are included in Gov. Code, § 821.6 protection]; *Cappuccio, Inc. v. Harmon* (1989) 208 Cal.App.3d 1496 [257 Cal.Rptr. 4] [issuing press release about prosecution is part of the judicial proceeding and thus included within the statutory immunity]; *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887 [184 Cal.Rptr. 269] [immunity under this statute extends to charges made in the press on investigations leading to license revocation proceedings].)

public interest in retaining the entire file in confidence. When discovery is permitted, it shall be limited to those documents reasonably necessary to plaintiffs' prosecution of their action. The alternative writ is discharged. Each side shall bear its own costs in this proceeding.

Sills, P. J., and Rylaarsdam, J., concurred.