[No. G028277. Fourth Dist., Div. Three. Oct. 11, 2001.]

MICHAEL P., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SHERIFF'S DEPARTMENT et al., Real Parties in
Interest.

**COUNSEL**

Law Offices of Joel M. Garson and Joel M. Garson for Petitioner.

No appearance for Respondent.

Laurence M. Watson, County Counsel, and James L. Turner, Deputy County Counsel, for Real Party in Interest Orange County Sheriff's Department.

Jones & Mayer, Harold W. Potter and Krista MacNevin Jee for Real Party in Interest Westminster Police Department.

Law Offices of Harold LaFlamme and Craig E. Arthur for Minor Alexandria P.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Petitioner Michael P., a party to a juvenile dependency action, served subpoenas duces tecum on real parties in interest

Orange County Sheriff's Department and the Westminster Police Department prior to the jurisdictional hearing. Petitioner sought to discover forensic evidence and various investigative reports compiled by real parties during their ongoing criminal investigation into the death of 21-month-old Monika G. The trial court granted real parties' motion to quash the subpoenas, finding the official information privilege applied and precluded disclosure of materials relating to an ongoing criminal investigation. We conclude the court abused its discretion by failing to conduct an in camera review of the requested items before ruling on real parties' motion. Accordingly, we grant the petition and remand the matter for the court to conduct an in camera review.

FACTS

Petitioner is the biological father and custodial parent of seven-year-old Alexandria P. His girlfriend Kirsten M. would frequently bring her 21-month-old daughter Monika on weekend visits to his home. On one of these visits Kirsten left Monika in petitioner's care; less than an hour later, Monika was transported to a hospital emergency room where she was treated for "subdural hemorrhaging, cerebral edema, optic nerve hemorrhaging, and retinal hemorrhaging." She died the following day.

Alexandria, who was also in petitioner's care and present when Monika sustained her injuries, was taken into protective custody by officers of the Westminster Police Department. Petitioner told investigating officers Monika fell off a couch and landed on a table. Alexandria told a social worker "the baby died and I did it." Alexandria later explained that she and Monika were playing a game on the couch. At one point during the game, Monika grabbed her and caused both of them to fall. Alexandria said she accidentally landed on top of Monika.

Orange County Social Services Agency (SSA) filed a Welfare and Institutions Code section 300 petition, alleging petitioner caused Monika's death and put Alexandria at risk of serious physical harm. The petition stated petitioner was "under investigation by the Westminster Police Department in connection with the homicide of [Monika] due to [her] suffering non-accidental trauma consistent with multiple blunt force trauma[.]" The treating physicians suspected shaken-baby syndrome. The assistant coroner's preliminary finding, however, was that Monika suffered seven blunt force blows to the head.

On the day scheduled for the jurisdictional hearing, the court granted petitioner's motion for a continuance. Petitioner's lawyer complained the

coroner's office had yet to complete its report, no medical reports had been provided, and, although he received a copy of one police report, he had not received a copy of a taped interview with Alexandria. The deputy county counsel stated she had provided petitioner's lawyer with all discovery in her possession. This included reports containing the social worker's synopsis of various SSA, medical, and police reports, but no original documents or forensic evidence.

The following day, petitioner's lawyer served subpoenas duces tecum on the custodians of records for the Orange County Sheriff's Forensic Services Department, the Orange County Coroner's Office, and the Westminster Police Department. Of the forensic services department, petitioner requested "[a]ll reports, writings, recordings, notes, photographs, video tape, blood and tissue laboratory examination reports/results. All crime scene investigation records, photographs, diagrams, reports, evidence collection logs, [and] video : . . ." He requested "[a]ll reports, writings, recordings, notes, photographs, [and] video tape . . ." from the coroner's office, and "[a]ll reports, writings, recordings, notes, video tape, crime scene investigation records, photographs, diagrams, reports, evidence collection logs, [and] video taped and audio taped interviews . . ." from the Westminster Police Department.

The Orange County Sheriff-Coroner moved to quash the subpoenas; the Westminster Police Department joined in the motion. Mindful of our recent decision in *County of Orange v. Superior Court* (2000) 79 Cal.App.4th 759 [94 Cal.Rptr.2d 261], the court declined to conduct an in camera review of the requested items, granted the motion to quash with the sole exception of a taped child abuse service team interview with Alexandria, and continued the trial.

Petitioner then filed a petition for writ of mandate with this court, requesting review of the ruling and a stay of the juvenile court proceedings. We granted the father's request for a stay and invited the parties to respond informally. Subsequently, we issued an alternative writ.

At oral argument, real parties in interest's lawyers reported the criminal investigation was ongoing and no criminal charges had been filed. Petitioner remained a suspect in the case. Police officials had "largely ruled out" Kirsten as the perpetrator. Alexandria, who was initially detained in Orangewood Children's Home, was later placed with her mother on a conditional release to intensive supervision agreement. Several doctors involved in Monika's treatment discounted accidental death. According to one doctor interviewed by a social worker, "there is a murderer out there, and it's not the seven year old."

DISCUSSION

Petitioner contends the court erred by granting the motion to quash without holding an in camera review of the items listed in his subpoenas duces tecum. He also contends real parties waived any privilege by sharing information with SSA. The first argument has merit.

*The Court Must Conduct an In Camera Inspection*

"Discovery in juvenile matters rests within the control of the juvenile court and the exercise of its discretion will be reversed on appeal only on a showing of a clear abuse. [Citations.] The juvenile court rules encourage the informal exchange of information between the parties and create an affirmative duty to disclose favorable evidence, subject only to a showing of privilege or other good cause. [Citation.]" (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1166 [53 Cal.Rptr.2d 93]; see also Cal. Rules of Court, rule 1420.)

Real parties in interest contend several privileges preclude disclosure of any of the requested materials: the official information privilege (Evid. Code, § 1040), the public records exemption (Gov. Code, § 6254, subd. (f)), criminal discovery provisions (Pen. Code, § 1054 et seq.), and the privacy rights of the "witnesses and . . . parties involved in [the] case." Three of these claims may be summarily rejected.

Criminal discovery provisions are limited to criminal cases. (Pen. Code, § 1054, subd. (e).) Real parties in interest's argument to the contrary is unsupported by citation to authority or argument. The same defect plagues the assertion of privacy interests for unidentified witnesses and parties. We need not address arguments for which a party provides no supporting authority. (*People v. Williams* (1997) 16 Cal.4th 153, 226, fn. 6 [66 Cal.Rptr.2d 123, 940 P.2d 710].) The public records exemption is part of the California Public Records Act. (Gov. Code, § 6250 et seq.) Application of the exemption is limited to proceedings under the act. (*Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 123-124 [130 Cal.Rptr. 257, 550 P.2d 161].)

Of the privileges asserted, only the conditional privilege contained in Evidence Code section 1040, subdivision (b)(2) (hereafter section 1040(b)(2)) may be applicable. This section " 'represents *the exclusive means* by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy.' [Citation.]" (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 123.) "A public entity has the privilege of refusing to disclose

and of preventing another from disclosing official information if the privilege is claimed by an authorized person and '[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered.' [Citations.]" *(People v. Montgomery* (1988) 205 Cal.App.3d 1011, 1017 [252 Cal.Rptr. 779].)

█ In *Shepherd v. Superior Court, supra,* 17 Cal.3d 107, the Supreme Court made clear that a public entity can withhold information as privileged under section 1040(b)(2) "only upon a finding that . . . its disclosure would be 'against the public interest.'" *(Id.* at p. 125.) The court stated, "[T]his determination requires that the trial court consider, with respect to *each* item of material [sought] . . . whether there is 'a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice.' . . . Such a weighing procedure will entail a separate assessment of the 'necessity for disclosure in the interest of justice' and the 'necessity for preserving the confidentiality [of the subject information].' [¶] Implicit in each assessment is a consideration of consequences— i.e., the consequences to the litigant of nondisclosure, and the consequences to the public of disclosure." *(Id.* at pp. 125-126, italics added, fn. omitted.)

The *Shepherd* court's directives are a clear command for a particularized assessment of the applicability of the privilege as to *each* item a public entity seeks to keep confidential in the face of a litigant's request for disclosure. Subsequent decisions by courts of appeal have further delineated the procedures required for a proper determination of the applicability of the section 1040(b)(2) conditional privilege. (See *People v. Superior Court* (1971) 19 Cal.App.3d 522, 530-531 [97 Cal.Rptr. 118]; *People v. Montgomery, supra,* 205 Cal.App.3d at pp. 1021-1022.) These include an in camera review pursuant to Evidence Code section 915, subdivision (b), attended by the party claiming the privilege, and an ensuing full-scale adversary hearing at which the strength of the parties' competing interests are explored, along with "the possibility of reasonable alternatives" to outright disclosure of the information sought. *(People v. Superior Court, supra,* 19 Cal.App.3d at pp. 530-531; *People v. Montgomery, supra,* 205 Cal.App.3d at pp. 1021-1022.) As the court noted in *People v. Superior Court, supra,* 19 Cal.App.3d at page 530, "A government claim of privilege would be impregnable without some probing by a neutral tribunal."

The one case which veered somewhat from this path was our decision in *County of Orange v. Superior Court, supra,* 79 Cal.App.4th 759. The procedural context of that case was strikingly analogous to the present matter: In

a writ proceeding we considered the application of the official information privilege to a murder investigation file which the prime suspects sought to obtain through civil discovery.

In *County of Orange*, Edith and Feilong Wu filed a defamation action against the Orange County Sheriff's Department after being publicly named suspects in their child's unsolved murder. The Wus swiftly served the sheriff's department with a request for production of essentially all documents relating to the criminal investigation. When the department refused to comply, the Wus moved to compel production. The superior court conducted an in camera review of the file and ordered its production. This court reversed. "We conclude on the record before us that the public interest in solving [the child's] homicide and bringing the perpetrator(s) to justice out-weighed the Wus' interest in obtaining the discovery sought, at least at the time this matter was considered below." (*County of Orange v. Superior Court, supra,* 79 Cal.App.4th at p. 767.)

The matter was left open to further judicial review. We noted the trial court could at some *later* point order disclosure of part or all of the file upon a determination that "the risk to the investigation from releasing confidential information from the investigative file is no longer a compelling concern." (*County of Orange v. Superior Court, supra,* 79 Cal.App.4th at pp. 768-769.)

Significantly, in *County of Orange* we declined an in camera review of the investigative file, declaring we had no "need to look at it to understand, for example, that it contains details only the killer(s) would know." (*County of Orange v. Superior Court, supra,* 79 Cal.App.4th at p. 763, fn. 2.) Without examining the contents of the file, we held the entire file privileged on the ground that the government's interest in protecting the confidentiality of information obtained from a (by then) four-year-old homicide investigation outweighed the interests of civil litigants in gaining discovery helpful to their case.

 Here, the juvenile court undoubtedly concluded that if an in camera hearing was not required in *County of Orange*, then it was unwarranted where the ongoing investigation was only two months old. But the question of whether items from a police investigative file should be subject to discovery turns on more than the age of the investigation. Application of the conditional privilege requires a weighing of interests, and we believe a litigant's interest in prosecuting a civil action for damages pales in comparison to a parent's interest in having custody of his or her child. Because the

latter interest would necessarily weigh more heavily than the former when balanced against the government's interest in keeping an investigative file private, our decision in *County of Orange* does not dictate the result here.

■ Parents have a "fundamental liberty interest" in the "care, custody, and management" of their biological children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 753 [102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599]; *In re Lucero L.* (2000) 22 Cal.4th 1227, 1247 [96 Cal.Rptr.2d 56, 998 P.2d 1019].) "[A] parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' [Citation.]" (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [101 S.Ct. 2153, 2159-2160, 68 L.Ed.2d 640].) While not equivalent to the interest of a criminal defendant in his or her liberty (*In re Sade C.* (1996) 13 Cal.4th 952, 982 [55 Cal.Rptr.2d 771, 920 P.2d 716]), the right to conceive and raise one's children requires greater protection than the interest of civil litigants seeking monetary damages. (*May v. Anderson* (1953) 345 U.S. 528, 533 [73 S.Ct. 840, 843, 97 L.Ed. 1221]; see also *Santosky v. Kramer, supra,* 455 U.S. at pp. 758-759 [101 S.Ct. at pp. 1397-1398].)

■ Petitioner has already been deprived of Alexandria's companionship. If the allegations of the petition are found true, the loss may well be permanent. Furthermore, as an involuntary participant in the pending juvenile dependency proceeding and as a criminal suspect, petitioner is thrust headlong into a "Kafkaesque" judicial proceeding. (See *B.B. v. Dept. of Children & Family* (Fla.Dist.Ct.App. 1999) 731 So.2d 30, 33; Patton, *The World Where Parallel Lines Converge: The Privilege Against Self-Incrimination in Concurrent Civil and Criminal Child Abuse Proceedings* (1990) 24 Ga. L.Rev. 473, 483.) To defend against the allegations supporting jurisdiction, petitioner is at the mercy of those governmental agencies holding the evidence and his child. The police and sheriff's departments have allowed SSA to review some of the reports contained in their investigative files. SSA has given petitioner its summaries of those reports. Yet petitioner is precluded from reviewing the original reports or any of the actual evidence in the files. Petitioner is apparently expected to simply trust his accusers not only to characterize the evidence accurately, but also to decide what, if any, evidence is relevant to his defense and subject to release. The unfairness of such a process is palpable.

While we allowed the police in *County of Orange* to maintain the confidentiality of the entire investigative file "for some reasonable period of time" without any particularized judicial review of its contents (*County of*

*Orange v. Superior Court, supra,* 79 Cal.App.4th at p. 768), we think the far weightier interest at stake here mandates a different result. Given the importance of the dependency determination to both parent and child, we hold the juvenile court was required to examine the investigative files in camera and carefully weigh the parties' respective, colliding interests in disclosure and confidentiality as to each item petitioner sought to discover, before ruling on the applicability of the conditional privilege to that item.

We conclude the juvenile court's refusal to conduct an in camera review of the items listed on petitioner's subpoenas duces tecum, its failure to engage in any particularized inquiry as to petitioner's need for disclosure of the items sought vis-à-vis the government's need to preserve their confidentiality, and the court's resulting blanket application of the privilege to *all* of the items listed, violated the procedural mandates of *Shepherd* and its progeny.

Consequently, the juvenile court is directed to conduct an in camera review of the requested items. As to each item, the court must evaluate petitioner's " 'necessity for disclosure in the interest of justice,' " assessing "the importance of the material sought to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means." (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 126.) Stating the obvious, material which is exculpatory as to petitioner would necessarily have great importance to "the fair presentation of [his] case." As the court explained in *People v. Superior Court, supra,* 19 Cal.App.3d at pages 532-533, "In weighing the defendant's need, the court was not to pass upon the veracity of his claim, but only to ascertain if a reasonable possibility existed that the requested information might exonerate him. [Citation.]"

The court must then weigh petitioner's need for each item sought against the interest of the state in " 'preserving the confidentiality of the information.' " (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 125.) If the government asserts disclosure of certain information will compromise the murder investigation, it must show the risk of harm is real. For example, petitioner expresses a strong interest in obtaining the assistant coroner's notes and report, as his preliminary finding concerning the nature of Monika's brain trauma apparently conflicted with the conclusion of the treating physicians. (The assistant coroner found evidence of seven blunt force blows to the head while the doctors suspected shaken baby syndrome.) In order to keep those writings confidential, real parties in interest must explain to the court how the release of such forensic evidence would jeopardize the investigation.

We think the mere fact evidence incriminates petitioner is not enough to prevent disclosure. The government must also show there is a real possibility release of the information would allow the perpetrator to avoid apprehension (for example, by allowing the perpetrator to tailor an explanation to fit the forensic evidence). After all, there may be no risk in disclosing evidence that reveals an airtight case against petitioner.

The foregoing inquiry at the in camera hearing into the nature and strength of the parties' respective interests is but a preliminary step in the trial court's analysis. "The in camera hearing is a preliminary inquiry into whether the claim of privilege should be upheld. If the [public entities] succeed in camera, the adversary process should be utilized, 'probing the information's relevance to the [petitioner], exploring with counsel the availability of other alternatives, and, if necessary, hearing testimony *voir dire.*' [Citation.]" (*People v. Montgomery, supra,* 205 Cal.App.3d at p. 1021; *Torres v. Superior Court* (2000) 80 Cal.App.4th 867, 874 [95 Cal.Rptr.2d 686].)

This adversary hearing is the appropriate place to consider "exploring creatively the 'available alternative[s]' " to the disclosure of particularly sensitive information from the police files. (*People v. Montgomery, supra,* 205 Cal.App.3d at p. 1022.) As we noted in *County of Orange,* "Obviously, the file may contain sensitive information that should not be disclosed preindictment. Or there may be material relevant to the [the litigants'] civil action that could possibly be safely confided to their attorney only[,] subject to a stringent protective order. . . . There will likely be relevant information that can be released without jeopardizing the investigation at all." (*County of Orange v. Superior Court, supra,* 79 Cal.App.4th at p. 769, fn. 4.) The trial court, of course, is in the best position to undertake this complex analysis. "What parts or how much of the file to disclose . . . is a question for the trial court." (*Id.* at p. 769.)

At the conclusion of these proceedings, the court will be in a position to rule on the claim of privilege and give adequate reasons for its decision with respect to each item requested, which may then be subject to appellate review. Only after such a thorough review will the court be able to balance petitioner's constitutional right to the companionship of his child against the state's interest in maintaining the confidentiality of its criminal investigation. (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 125; see also *People v. Superior Court, supra,* 19 Cal.App.3d at pp. 530-531.) The juvenile court may later revisit its decision should further proceedings tip the balance in favor of additional disclosure. (*County of Orange v. Superior Court, supra,* 79 Cal.App.4th at pp. 768-769.)

Information that sheds light on the cause of Monika's death is certainly relevant to the ultimate question in this proceeding. While we are mindful of real parties' concerns for confidentiality in their ongoing investigation, all parties and the court would benefit from access to as much information concerning the circumstances of Monika's death as is practicable. The state has no interest in an erroneous decision that separates a parent from his or her child. (*Lassiter v. Department of Social Services, supra,* 452 U.S. at p. 27 [101 S.Ct. at pp. 2159-2160].) Nevertheless, we are cognizant that the paramount interest here is apprehension of Monika's killer. Any release of information with a real likelihood of interfering with that goal must be avoided. The in camera review process will provide the court with an opportunity to fully evaluate the information and carefully balance the competing interests involved.

*There Was No Waiver of the Official Information Privilege*

■ We reject petitioner's contention real parties waived the official information privilege by providing information to SSA. Real parties in interest did not "consent" to the release of any official information in this proceeding. (§ 1040(b)(2).) They merely permitted social workers to review various reports and summarize their contents for inclusion in their reports. Furthermore, the policy behind the official information privilege is one of *governmental* privilege, not merely single-agency privilege. (See Assem. Com. on Judiciary com., 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 1040, p. 375 ["the privilege is granted to enable the government to protect its secrets"].)

Especially in criminal investigations, agencies of government at the state, county, and local level often work together and share information. Inter-agency information sharing should not automatically constitute a waiver of the official information privilege. As one commentator has suggested, so long as sufficient safeguards are in place to prevent disclosure to persons with no "official interest" in the information, "[w]hen . . . a public official divulges privileged information to other agencies or officials with an official interest in the information, such disclosure does not constitute a waiver . . . ." (Comment, *Governmental Privileges: Roadblock to Effective Discovery* (1973) 7 U.S.F. L.Rev. 282, 285, fn. omitted.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order granting real parties in interest's motion to quash and to conduct an

in camera review in accordance with the views expressed above. The alternative writ is discharged.

O'Leary, J., and Aronson, J.,* concurred.

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.